ALICE G. K. KLEBERG, PETITIONER, *v*. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

ALICE G. K. KLEBERG, EXECUTRIX OF THE ESTATE OF ROBERT J. KLE-
BERG, SR., DECEASED, PETITIONER, *v*. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 86178, 86179.   Promulgated January 14, 1941.

278

*Leroy G. Denman, Esq.,* for the petitioners.
*John E. Marshall, Esq.,* for the respondent.

286

BLACK: We shall first discuss and decide those issues which are common to both proceedings. The first of these issues is whether the agreement by petitioners with the representatives of the King estate by which they agreed to transfer their right to receive $11,983.55 per annum for a period of 20 years from Humble for their oil and gas lease of a three thirty-seconds interest in the King ranch for a consideration of $149,341.51, payable in two installments, was a sale of the right to receive such payments, as the Commissioner contends, and whether the entire amount was taxable in 1933 although only one-half of it was received in 1933, as the Commissioner contends, or whether the transaction simply amounted to a step-up plan as to the time of payments, as petitioners contend, and petitioners are only required to return for taxation the actual amounts that they received in 1933. They were both on the cash receipts basis. The facts with reference to this transaction are fully stated in our findings of fact and need not be here repeated.

It is our opinion that the respondent is correct in his contention that the transaction between petitioners and the representatives of the King estate was a sale, but we do not agree with the respondent that the entire $149,341.51 is taxable to petitioners in 1933.

In *Hale* v. *Helvering*, 85 Fed. (2d) 819, the elements necessary to constitute a sale were discussed. Among other things the court said:

The word "sell" * * * in its ordinary sense means a transfer of property for a fixed price in money or its equivalent. *United States* v. *Benedict* (C. C. A.) 280 F. 76, 80.

Let us examine the agreement between petitioners and the representatives of the King estate. The parties were competent to contract. There was mutual consent. The thing the absolute or general property in which was transferred from petitioners to the King estate was petitioners' right to receive 20 annual rental payments of $11,983.55 each. The price in money paid or promised was $74,670.75 in cash paid upon the execution of the agreement, and a promise to pay $74,670.75 in cash on January 2, 1934. Thus all the elements of a sale are present. Thereafter, the King estate had the absolute right to receive as its own property from Humble the entire annual rental of $127,824.60 without accounting to petitioners for any of it. Petitioners had transferred to the King estate all of their right to receive any portion of such annual rental for a cash consideration of $149,341.51. In our opinion that transaction between petitioners and

the King estate must be regarded as a sale as that word is understood in its ordinary signification.

It, however, does not follow, as respondent contends, that the entire gain is taxable in 1933, the year the sale was made. Section 111(a) of the Revenue Act of 1932 provides that the gain from the sale or other disposition of property shall be the excess of the "amount realized" therefrom over the basis. Section 111(b) provides:

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

What "property" did petitioners receive during 1933 other than the sum of $74,670.75 in money? Obviously, petitioners received nothing more in the year 1933 than the contractual promise of the King estate to pay the remaining one-half of $149,341.51 during 1934. In *C. W. Titus, Inc.*, 33 B. T. A. 928, after reviewing at considerable length several cases where a part of the consideration for the sales there involved was evidenced only by a contract to pay in a later year, we said:

In none of the foregoing cases was there any evidence introduced directed to the question of the fair market value of the promise to pay, except in the case of *Dudley T. Humphrey*, supra, discussed above.

In all of the court decisions above discussed the courts took the position that, when evidence was introduced showing that the deferred payments were evidenced only by contract, where no notes, bonds, or other evidences of indebtedness other than the contract were given, such contract had no fair market value, and that the amounts of the deferred payments should be included in income when received. * * *

Applying the principles enunciated in the *Titus* case and the cases discussed therein to the instant proceedings, it seems clear that only one-half of the total consideration of $149,341.51 was realized by petitioners in the taxable year 1933, and that the respondent erred in proposing to tax petitioners in 1933 upon the amount that was to be received and which was actually received in 1934.

We have examined the cases cited by the respondent in his brief in support of his contention that the entire consideration was taxable in 1933, but we do not regard these cases as being in point.

Petitioners next contend that they are entitled to a percentage depletion allowance upon the $74,670.75 which they received from the King estate during 1933 as a result of the transactions just above discussed. They contend that the payment to them of $74,670.75 in 1933 represents a cash advanced royalty payment and as such is depletable. It seems to us that this contention can not be sustained, for the reason that petitioners did not retain their right to receive three thirty-seconds of the annual rental of $127,824.60 to be paid by Humble. As has already been held in this opinion, they sold that right to the King estate for a consideration of $149,341.51 payable

in two installments. The reason given by the respondent in his statement attached to the deficiency notice in Docket No. 86178 for denying depletion as to this item is that "it is held by the Bureau that the transaction represented a sale of future lease rentals, or right to receive future lease rentals and the amount received was, therefore, not subject to depletion." We think this determination by the respondent is correct and is a valid reason for denying petitioners a deduction for depletion on the $74,670.75 which they received from the King estate during the taxable year 1933. Cf. *Commissioner* v. *Fleming*, 82 Fed. (2d) 324; *Helvering* v. *O'Donnell*, 303 U. S. 370; *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372; *Blankenship* v. *United States*, 95 Fed. (2d) 507; *Hammonds* v. *Commissioner*, 106 Fed. (2d) 420; and *Anderson* v. *Helvering*, 310 U. S. 404. In the *Anderson* case the Supreme Court, among other things, said:

> The sole owner and operator of oil properties clearly has a capital investment in the oil in place, if anyone has, and so is taxable on the gross proceeds of production and is granted a deduction from gross income as compensation for the consumption of his capital. See *Burnet* v. *Harmel, supra*, at 107–108; *Helvering* v. *Clifford*, 309 U. S. 331. *By an outright sale of his interest for cash*, such an owner converts the form of his capital investment, severs his connection with the production of oil and gas and the income derived from production, *and thus renders inapplicable to his situation the reasons for the depletion allowance*. * * * [Italics supplied.]

See also *R. R. Ratliff*, 36 B. T. A. 762.

When petitioners transferred to the King estate their right to receive the annual payments from Humble for the lease of their three thirty-seconds interest in the King ranch lands, the King estate became entitled to receive whatever depletion, if any, was allowable as to this interest. Two separate and distinct taxpayers are not entitled to receive depletion deductions as to the same oil interest. *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312. On this issue we sustain respondent.

We will next discuss issue 3, raised in Docket No. 86179. This issue was raised by petitioner in the alternative, and in substance is that if the Board sustains the Commissioner in his disallowance of percentage depletion deductions as respects the payments received from the three thirty-seconds interest, then the Commissioner erred in not allowing the petitioner in Docket No. 86179 a recovery of cost basis in determining gain from the disposal of such interest to the King estate.

Since this opinion holds that the transaction between petitioners and the King estate was a sale of petitioners' right to three thirty-seconds of the annual rental of $127,824.60 to be paid by Humble for a period of 20 years, it follows that the amount of gain or loss from this sale must be determined in accordance with sections 111 and 113

of the Revenue Act of 1932. As far as the present issue is concerned, the material provisions of these sections are as follows:

SEC. 111. DETERMINATION OF AMOUNT OF GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b), and the loss shall be the excess of such basis over the amount realized.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(5) PROPERTY TRANSMITTED AT DEATH.—\* \* \* If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. \* \* \*

Petitioner Alice G. K. Kleberg in Docket No. 86178 concedes she has no cost basis to be applied against her one-half of the amount realized in determining the amount of her gain or loss from the sale. Therefore, the remainder of the discussion under this issue will apply only to the petitioner in Docket No. 86179, namely, Alice G. K. Kleberg, executrix of the estate of Robert J. Kleberg, Sr., deceased.

Does the estate of Robert J. Kleberg, Sr., have a basis to be applied against its one-half of the amount realized in determining the amount of its gain or loss from the sale?

Our findings of fact show that decedent Robert Kleberg's one-half interest in three thirty-seconds of the mineral rights in the King ranch property was valued for estate tax purposes at $100,000. The estate tax return was made approximately a year after Kleberg's death and shortly after the Humble lease had been executed.

If the Kleberg estate had sold its entire interest in all the oil, gas, and other minerals in the King ranch, there could be no question but in computing the gain or loss on the sale it would be entitled to a basis of $100,000 under section 113 (a) (5) of the Revenue Act of 1932. But it did not do this. It merely sold its right to receive one-half of three thirty-seconds of the annual rental of $127,824.60 to be paid by Humble. Should any part of the basis of $100,000 be allocated to that sale? We think that unquestionably such an allocation must be made, if it is possible to make it, because the Kleberg estate sold part of its mineral rights in the three thirty-seconds interest and it retained part of this interest. Cf. *Columbia Oil & Gas Co.*, 41 B. T. A. 38.

The evidence shows that the value of $100,000 was arrived at by attributing $75,000 to the right of the Kleberg estate to receive the

annual rental from the Humble lease and $25,000 to the right of the Kleberg estate to receive its share of the specific reserved royalties mentioned in paragraph 3 of the lease. No value was attributed to the retained interest of one-half of three thirty-seconds of all the oil, gas, and other minerals, if any, in the King ranch after the expiration of the lease to Humble made on September 26, 1933. Petitioner, the Kleberg estate, contends that it is entitled to use, as a basis in determining the gain or loss upon the sale in question, $75,000 of the $100,000 basis attributable to the entire mineral interest owned by the Kleberg estate at the time of the sale. We think that under the sections of the statute above cited this contention must be sustained.

The petitioner in Docket No. 86178, Alice G. K. Kleberg, had no cost basis and claims none. Recomputation under Rule 50 should be made in accordance with the above.

The remaining issues concern only Alice G. K. Kleberg, petitioner in Docket No. 86178. The first of these issues is whether she is entitled to depletion on the amount of $24,656.92 received by her from Humble in 1933 as the result of the lease to Humble of her 30,439.23-acre tract.

In denying depletion as to this item the respondent in a statement attached to the deficiency notice said:

Depletion claimed of $6,780.65 on an amount of $24,656.92 received from the Humble Oil and Refining Company in 1933 has been disallowed since it is held that the amount received represented advanced delay rentals and as such was not subject to depletion.

Paragraph 8 of the agreement executed between petitioner and Humble provided in part:

8. During the second ten year period from date hereof, Humble Oil & Refining Company shall have the right to appropriate unto itself and to retain as its own property, the proceeds of all the royalties on oil, gas and other minerals accruing during each year to Alice G. K. Kleberg and Robt. J. Kleberg, Jr., individually and as Trustee, and/or either of them, from and under said leases to the extent of an aggregate of twenty two thousand one hundred seventy five and 40/100 dollars ($22,175.40) each year; and such deduction shall be made before applying any of the proceeds during such years from such royalties on said notes as hereinbefore provided.

If the proceeds from all of such royalties in any year during said second ten year period should not equal said sum of twenty two thousand one hundred seventy five and 40/100 ($22,175.40) the deficiency between such proceeds and the twenty two thousand one hundred seventy five and 40/100 ($22,175.40) shall not be carried forward into succeeding years. * * *

It will be noted that the $22,175.40 named above, as the amount which Humble had the right to reimburse itself out of royalties during the second 10-year period of the lease, represents the sum of $3,957.07 and $18,218.33, annual payments to Alice G. K. Kleberg

and Robert J. Kleberg, Jr., respectively. In other words, during the second 10-year period of the lease between Alice G. K. Kleberg and Humble, the latter had the right to appropriate unto itself the proceeds from royalties up to the annual rent of $3,957.07 which was payable to her, but if the proceeds from royalties in any one of those years of the second 10-year period failed to equal $3,957.07, the deficiency could not be made up in any succeeding year. In order for the annual rental during the second 10-year period to take the place of royalties to the extent of the entire annual rental of $3,957.07, two things were necessary. First, oil, gas, or other mineral would have to be discovered and produced, and, second, the proceeds from production each year during the second 10-year period would have to be sufficient to at least equal the annual rental of $3,957.07.

On September 26, 1933, Humble wrote a letter to the King estate in which, among other things, it said:

It is our understanding that no exploratory work is to be required under said leases during the first five (5) years from this date; but during the 20-year primary term of said leases Humble Oil & Refining Company is to explore the leased area as adequately as it can by its geophysical and geologic technique. It is further understood that no exploratory work by drilling is required of Humble Oil & Refining Company except to drill such offset wells as may be implied from the terms of the leases.

Instead of Humble paying Alice G. K. Kleberg an annual amount of $3,957.07 each year for 20 years, this amount was discounted down to a present value of $49,313.83, one-half of which was paid petitioner in 1933 and the other half in 1934.

On the basis of the above facts it is our opinion that the amount received by petitioner in 1933 (one-half of $49,313.83 or $24,656.92) is in the nature of advance royalties, as petitioner contends, rather than advance delayed rentals, as respondent contends, and is, therefore, subject to depletion. The respondent in his brief contends that the amount received was not subject to depletion upon the grounds that it was rent rather than a bonus or advance royalty. He relies upon *Duffy* v. *Central Railroad Co. of New Jersey*, 268 U. S. 55; *Commissioner* v. *Wilson*, 76 Fed. (2d) 766; *J. T. Sneed, Jr.*, 33 B. T. A. 478; and *Continental Oil Co.*, 36 B. T. A. 693. The *Duffy* case is not very helpful, as the Supreme Court was not called upon to distinguish between rental on the one hand and royalties on the other. The three other cases cited above and relied upon by the respondent, although holding the amounts there involved to be delayed rentals, do lay down certain principles that govern in the determination of the difference between delayed rentals and royalties.

For example, in the *Sneed* case the payments which we held to be "delayed rentals" and not a "bonus" in the nature of advance roy-

alties were paid to Sneed as the lessor under the following clause in the lease:

If no well be commenced on said land on or before the 26th day of May, 1927 (one year after its execution) this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor, * * * the sum of $160 [$1 per acre], which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payment or tender the commencement of a well may be further deferred for like periods of the same number of months successively.

The $4,334 rent payment involved in *Continental Oil Co., supra,* we held to be a similar payment to that involved in the *Sneed* case, *supra.* In the instant case the situation is different. The payment of $24,656.92 involved was not made by Humble to petitioner as delayed rental. The transaction as we view it was substantially this: Petitioner in consideration of a payment of $49,313.83 payable to her in two installments, plus a reserved oil and gas royalty of one-eighth of the oil and gas to be produced, leased her 30,439-acre tract to Humble for a period of 20 years, and thereafter as to any developed structures for as long as production is had from such structure. Under this state of facts we hold that the $24,656.92 received by petitioner in 1933 was a bonus in the nature of advance royalties, and that petitioner is entitled to percentage depletion thereon.

### Issue 4.—Disallowance of One-half of a Community Bad Debt.

Issue 4 in Docket No. 86178 concerns the Commissioner's disallowance of one-half of $409 which the community estate of petitioner and her deceased husband, Robert J. Kleberg, Sr., had to pay by reason of a guaranty contract which he had entered into during his lifetime. The deficiency notice, in disallowing to petitioner a deduction of one-half of this claimed community bad debt, says:

The amount of $204.50 claimed as interest paid on a note on which Robert J. Kleberg, Sr. was one of two guarantors has been disallowed since the amount actually represented a bad debt, the total of which was deductible by the Estate of Robert J. Kleberg, Sr.

What the parties have stipulated with reference to this issue is shown in the concluding part of our findings of fact.

The Commissioner in his brief, after quoting the stipulation with respect to this issue, says:

Respondent determined that the full amount of $409.00 represented a bad debt, the total of which was deductible by the estate. Petitioner offered no proof on this point; and the Commissioner's determination should be approved for lack of proof.

The stipulation as to the facts involved in this issue is not as clear as it should be. However, at the hearing when the stipulation on this issue was entered into it was done by respondent's counsel

stating orally into the record what we have copied in our findings of fact, and after respondent's counsel had thus stated it petitioner's counsel agreed thereto. We think it is only fair to construe the stipulation as an agreement that the facts with reference to this issue were as had been stated by petitioner in her petition and that only an issue of law was being presented to the Board for decision. Otherwise, it seems to us that the stipulation to which we have referred would have no point.

The facts stated in the petition with reference to this issue are as follows:

During the year 1933 petitioner and her deceased husband's estate were required to pay out of their community estate the sum of $409 upon a note guaranteed by said Robert J. Kleberg during his life. Said note was then wholly uncollectible and was uncollectible as a bad debt during the year 1933. It was a liability of the community estate of petitioner and her deceased husband and was paid out of said estate belonging one-half to each. Commissioner has allowed the same as a bad debt, but has attempted to allow it wholly to the husband's estate as a deduction, whereas it should be deducted one-half from the income of petitioner and one-half from the income of her husband's estate.

The Commissioner makes no point that the debt was not ascertained to be worthless in 1933 nor that it was not properly charged off in that year. The only point that he makes is that the deduction of the entire debt of $409 should be allowed to the estate of Robert J. Kleberg, Sr., as he has determined, and that petitioner Alice G. K. Kleberg has not offered sufficient evidence to overcome the presumptive correctness of this determination. Assuming that the facts are as stated in the petition of Alice G. K. Kleberg, and we do make that assumption because of the reasons just stated, we hold in favor of petitioner on this issue.

In *Hinzie* v. *Robinson*, 50 S. W. 635, a Texas case, it was held that a husband's debt as a surety on a bond was a community debt, even though the debt became fixed by the principal's default after the dissolution of the marriage by death of one of the spouses, the court holding that all such debts by the husband are charges upon the entire community estate. In that case, the court, among other things, said:

A debt or obligation created by the husband during coverture, as this one was, creates a charge upon the community estate, and hence, in general terms, a community debt may be said to be any debt or liability made by the husband during marriage. Ballinger, Community Property, Sect. 117.

Our sustaining petitioner on this issue means that in a recomputation under Rule 50 the petitioner in Docket No. 86179 should only be allowed a deduction of one-half such bad debt instead of being allowed all of it as the Commissioner has done in his determination of the deficiency.

*Issues 5 and 6.—Claimed Deductions for Bad Debt and for Worthless Stock.*

Petitioner in her income tax return for the year 1934 claimed a deduction of $29,760 as a bad debt, which she had ascertained to be worthless in that year and had charged off to that extent out of a total indebtedness which she held against the Kleberg Town & Improvement Co. She also claimed a deduction of $24,800 as representing cost of stock she owned in that corporation, which she alleged became worthless in 1934. We do not have the year 1934 before us. Petitioner has now changed her position and claims that she is entitled to these deductions in the year 1933, which we have before us, and she has made appropriate assignments of error to that effect. This change in position she, of course, has the right to make, and if the evidence sustains her claims as to these deductions in 1933 she will be entitled to have them allowed in a computation under Rule 50.

We shall first take up the claimed bad debt deduction. The respondent opposes this claimed deduction on the ground that if a debt exists it was not without value nor charged off during the year 1933.

Even if we assume that $29,760 of petitioner's $59,520 debt became uncollectible in 1933, and we are not deciding that such is the fact, we could not allow petitioner's claim. The claimed deduction for a bad debt must be disallowed for the adequate reason that the debt was not charged off during the taxable year. On this point the evidence is clear that no entry charging off the debt was made on petitioners' books until the year 1934. In this circumstance the deduction may not be allowed. Sec. 23 (j), Revenue Act of 1932; *A. P. Hunt*, 33 B. T. A. 946, and cases there cited.

It should be noted that section 23 (j) of the Revenue Act of 1932, unlike prior revenue acts, in the case of a partial worthlessness of a debt provides that "The Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

The requirement of a charge-off made during the taxable year, since it is found in the taxing statute itself, may not be excused on any showing such as petitioner now contends, that she was in doubt as to the year of worthlessness or that she was uninformed during the taxable year as to the financial condition of the debtor. Petitioner claims a deduction allowed by the statute and must therefore bring herself clearly within the terms of the law. *New Colonial Ice Co. v. Helvering*, 292 U. S. 435. This she has not done and accordingly the action of the respondent in disallowing the claimed bad debt deduction is approved.

There remains the question of the worthlessness of the stock held by petitioner in the Kleberg Town & Improvement Co., for which

she claims a loss in 1933 in the amount of $24,800. The evidence on this point shows substantially the following situation: The Kleberg Town & Improvement Co. during the years from its founding down through the taxable year had its principal source of income in the sale of its lands. Prior to the year 1928 the gross income or gain realized therefrom was in excess of all expenses, but during the period 1928 through 1933 it was not sufficient to cover taxes and other items of expense. The prospects for the profitable sale of its lands declined during this period, due to generally poor business conditions that prevailed in the towns in which the lands were located. The company's balance sheet at the end of the taxable year shows a deficit in the amount of approximately $46,000, which left only about $4,000 of unimpaired capital. In 1934 the corporation's losses continued and its balance sheet at the end of 1934 showed that all the capital stock of the corporation had been wiped out and that there was a capital deficit according to the books at the end of that year. It was in that year that the petitioner charged off the investment on her books. It may well be that she is entitled to the deduction in 1934, but we have not that year before us, and we are not passing upon the merits of the deduction in that year. We simply say that we do not think petitioner has sustained her burden of proof to show that the stock became entirely worthless in 1933. Doubtless the value of the stock had shrunk to where it had only a small value in 1933, but that is not enough to entitle her to the deduction which she claims.

Petitioner in her proof on this point is under the necessity to show that the company's stock had no value in 1933. *Gowen* v. *Commissioner*, 65 Fed. (2d) 923; *Sacks* v. *Commissioner*, 66 Fed. (2d) 308; *Paul Pryibil*, 31 B. T. A. 164; *John J. Flynn*, 35 B. T. A. 1064. This we think has not been shown.

On the basis of all the evidence we can not say petitioner has sustained the burden she must assume to show the error in Commissioner's determination and accordingly the claimed deduction for stock loss in the amount of $24,800 must be disallowed.

*Decision will be entered under Rule 50.*