ESTATE OF EUGENE MERRICK WEBB, DECEASED, FRANKIE L. SEBAT, EXECUTRIX, FRANKIE L. SEBAT, SURVIVING WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF EUGENE MERRICK WEBB, DECEASED, FRANKIE L. SEBAT, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54755, 54756. Filed September 10, 1958.

*Clyde W. Key, Esq.*, for the petitioners.
*James R. Harper, Jr., Esq.*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in income tax of petitioners as follows:

| Year | Docket No. | Deficiency |
|------|-----------|-----------|
| 1946 | 54756 | $2,725.61 |
| 1947 | 54756 | 1,560.15 |
| 1948 | 54755 | 582.82 |
| 1949 | 54755 | 1,345.28 |

The cases were consolidated for hearing. Subsequent to the filing of the petitions, Frankie L. Webb remarried and her present name, Frankie L. Sebat, has been substituted in the captions of these cases.

There is no issue in this proceeding in regard to the statute of limitations as to any of the years 1947, 1948, and 1949. The petitioners concede that the period of limitation upon the assessment and collection of tax in this proceeding for the year 1946 has not expired if it is shown that Eugene Merrick Webb omitted from his 1946 return income in an amount properly includible therein which was in excess of 25 per cent of the amount of gross income stated in the return. The issues are:

(1) Whether gains from the sale of real estate during the years 1946 to 1948, inclusive, are taxable as ordinary income;

(2) Whether assessment of the deficiency for the year 1946 is barred by the statute of limitations;

(3) Whether respondent erred in disallowing the cost of a meat diet as a medical expense deduction for each of the years 1946 to 1949, inclusive;

(4) Whether respondent erred in disallowing a deduction for city and county taxes for the taxable year 1949.

In their petition in Docket No. 54755, petitioners claimed that respondent erred in not allowing a deduction in the amount of $606.47 on account of real estate ad valorem taxes paid during the calendar year 1949. By amendment to petition, petitioners claimed that respondent erred in not allowing a deduction in the amount of $2,145.50 on account of real estate ad valorem taxes and other taxes paid during the calendar year 1949.

FINDINGS OF FACT.

Some of the facts have been stipulated and are so found. Eugene Merrick Webb (hereinafter referred to as Webb) filed timely individual income tax returns for each of the years 1946 and 1947 with the collector of internal revenue for the district of Tennessee. Webb and his wife, Frankie L. Webb (hereinafter referred to as Frankie), filed a timely joint individual income tax return for the calendar year 1948 with the collector of internal revenue for the district of Tennessee.

Webb died on June 29, 1949. In due course Frankie became the duly qualified and acting executrix of Webb's estate. Frankie, acting in her capacity as executrix of the estate of Webb and also acting in her individual capacity filed a joint individual income tax return for the calendar year 1949 on September 15, 1950, with the collector of internal revenue for the district of Tennessee.

Prior to 1936, Webb was employed by the Federal Housing Administration. Beginning in 1936, he had a series of strokes resulting in a malignant hypertension. This ailment was accompanied by very poor circulation, headaches, and frequent attacks of numbness. Although Webb was confined to his bed much of the time, he was required to get up and walk for 5 minutes out of each 30 minutes. Webb's diet consisted of beefsteaks with kidney fat broiled without butter or salt, and quantities of grapefruit, avocados, pears, and potatoes cooked in a certain manner. Webb consumed this diet three times a day for the rest of his life.

Webb's illness required him to give up his regular employment. After the year 1936 Webb had no regular employment and had no real estate broker's license which would entitle him to sell real estate for a commission. Webb did have an insurance broker's license and sold fire insurance on properties owned by corporations in which he was interested.

On August 20, 1937, H. A. Schubert and Webb purchased from Barbara Fulton and W. M. Fulton property known as the Villa Gardens which consisted of 59 tracts. After that time and prior to 1941, some of this property was sold. On March 13, 1941, Schubert and Webb subdivided the remaining property in Villa Gardens into approximately 300 lots. One hundred sixteen of these lots were sold in a single transaction to a corporation known as Forest Hills, Inc. None of the stock of Forest Hills, Inc., was owned by Webb, Frankie, or Schubert.

Knoxville Modern Homes, Inc., was organized July 31, 1941, under the laws of the State of Tennessee with an authorized capital stock consisting of 1,000 shares of stock of no par value. At the inception of the corporation 150 shares of common stock with no par value were issued. Seventy-five shares were issued to Schubert and 75 to Webb for $10,000 cash and a transfer to the corporation of 50 real estate lots located in various subdivisions. These lots were set up on the corporation's books at an appraised value of $20,000.

Knoxville Better Homes, Inc., was organized January 20, 1942, under the laws of the State of Tennessee with an authorized capital stock consisting of 1,000 shares of common stock with no par value. At the inception of the corporation 150 shares of common stock of no par value were issued. Seventy-five shares were issued to Schubert and 75 to Webb in exchange for the transfer of 50 real estate lots located in various subdivisions. These lots were set up on the corporation's books at an appraised value of $24,575.

City Homes, Inc., is a corporation existing under the laws of the State of Tennessee, formed in October 1943. This corporation was formed with a stated purpose to buy and sell real estate on commission or as owner; to purchase tracts of land and subdivide the same for purposes of sale or lease; to negotiate loans on real estate for other persons or for the corporation; to make contracts for furnishing labor to persons desiring the same; and generally to do all things as agent acting between buyer and seller as may have a tendency to introduce labor, capital, or population into the State and to sell, rent, exchange, or improve real estate on commission or as owner. During all of the years before the Court, Webb owned one-third of the stock in this corporation. Webb was elected president of City Homes, Inc., on September 26, 1946, and continued to act as president until his death.

Webb & Hayes, Inc., is a corporation existing under the laws of the State of Tennessee and was formed in May of 1945. The corporation was formed with a stated purpose to buy and sell real estate on commission or as owner; to purchase tracts of land and subdivide the same for purposes of sale or lease; to negotiate loans on real estate for other persons or for the corporation; to make contracts to do all things as agent, acting between buyer and seller, as may have a tendency to introduce labor, capital, or population into the State, and to sell, rent, exchange, or improve real estate on commission or as owner. During all of the years before the Court, Webb owned one-half interest in this

corporation. Webb was elected president of Webb & Hayes, Inc., at the inception of the corporation and continued to act as president until his death.

From the year 1946 to the date of his death in 1949 Webb maintained a desk at the office of the Real Estate Title Insurance Co. He was usually at the office by 8 : 30 a. m. of each business day and he remained there from 30 minutes to 1 hour.

During the taxable years Webb and H. A. Schubert were associated in many real estate transactions. Schubert furnished the money for the purchase of real estate while Webb located property and looked after it. Webb and Schubert frequently had lunch together to talk over real estate transactions. Real estate located by Webb and purchased by Schubert was usually sold "when the price was right," and Webb and Schubert would divide the profit from the sale.

Webb and George H. Hayes also made several sales of real estate. These sales were made to corporations in which Webb and Hayes held a controlling interest, and the real estate involved was bought and sold in the same month.

Webb did not advertise real estate for sale. The sales he made were usually unsolicited.

During the years 1937 to 1944, inclusive, Webb made 153 sales of real estate. During the year 1945, he made 20 sales of real estate and realized a gain therefrom of $19,925.14.

The gain realized by Webb from the sale of real estate during the taxable year 1946, as well as the dates of acquisition and sale, the division of equities, the purchaser, and other information with respect to the property sold, are as follows:

GAIN FROM REAL ESTATE SALES

| 1946, date sold | Purchaser | Date acquired | Cost | Selling price | Selling expense | Profit | E. M. Webb interest | Remarks |
|---|---|---|---|---|---|---|---|---|
| 3/4 | Webb & Hayes, Inc. | 1936 | $580.80 | $4,509.89 | $1,362.53 | $2,576.56 | ---- | Lots 6-A/B, 7/11, 13/14, B Lots 8/9. |
| 3/4 | City Homes, Inc. | 1936 | 1,902.16 | 5,950.00 | 6.60 | 4,041.24 | ---- | Lots 1/17, Block FF, Sequoyah Hills. |
| 3/11 | E. L. Donaldson | 1936 | 211.20 | 3,200.00 | 582.49 | 2,406.31 | ---- | Lots 18/21, Kennell Drive. |
| 6/24 | E. Rhode | 1936 | 40.05 | 500.00 | 5.78 | 454.17 | ---- | Lot 348, Villa Gardens. |
| 10/26 | D. B. Dalton | 1936 | 52.80 | 1,250.00 | 160.19 | 1,037.01 | ---- | Lot 3, Sequoyah H. |
| 10/29 | Wm. E. Tate | 1936 | 52.80 | 1,000.00 | 149.25 | 797.95 | ---- | Lot 6, Keowee Dr. |
| Total | H. A. Schubert, ⅔ interest. | | 2,839.81 | 16,409.89 | 2,256.84 | 11,313.24 / 7,542.16 | | |
| 4/10 | E. M. Webb, ⅓ interest. Webb & Hayes, Inc. | 5/4/42 | 1,000.00 | 12,750.00 | 3,889.30 | 7,910.70 | **$3,771.08** | Lots (16 acres), Riverview Terrace. |
| | H. A. Schubert, ⅓ interest. E. M. Webb, ⅓ interest. | | | | | 3,955.35 | 3,955.35 | |
| Jan | Reported per return (capital gain) | 1944 | | | | 398.16 | | Acreage lots. |
| May | Reported per return (capital gain) | 1941 | | | | 243.75 | | Acreage lots. |
| June | Reported per return (capital gain) | 1936 | | | | 270.53 | | Acreage lots. |
| Aug | Reported per return (capital gain) | 1937 | | | | 287.60 | | Acreage lots. |
| Aug | Reported per return (capital gain) | 1937 | | | | 135.23 | | Acreage lots. |
| Sept | Reported per return (capital gain) | 1936 | | | | 121.46 | | Acreage lots. |
| Sept | Reported per return (capital gain) | 1936 | | | | 55.44 | | Acreage lots. |
| Sept | Reported per return (capital gain) | 1940 | | | | 333.00 | | Acreage lots. |
| Feb | Webb & Hayes, Inc. | Feb. 1946 | 14,000.00 | 15,000.00 | | 1,000.00 | 1,845.17 | 45 lots Scott's Oak Hill Subdivision. |
| July | Webb & Hayes, Inc. | July 1946 | 21,000.00 | 43,500.00 | | 22,500.00 | | 87 lots McMillan Heights Addition. |
| Dec | Webb & Hayes, Inc. | Dec. 1946 | 400.00 | 500.00 | | 100.00 | | 10 lots Scott's Oak Hill Addition. |
| Total | | | 35,400.00 | 59,000.00 | | 23,600.00 | | Notes discounted 28.39917%. |
| | Notes of $57,500 valued at 73.60083%. | | 34,675.80 | 42,320.48 | | 7,644.68 | | |
| | Note of $1,500 valued at 97.0873%. | | 724.20 | 1,456.31 | | 732.11 | | Note discounted 2.9127%. |
| Total | George H. Hayes, ½ interest. | | 35,400.00 | 43,776.79 | | 8,376.79 | | |
| | E. M. Webb, ½ interest. | | | | | 4,188.40 | 4,188.39 | |
| Total profit | | | | | | | 13,759.99 | |

On his income tax return for 1946, Webb reported gross income of $4,875.39. None of the profit from the notes received from the sale of lots to Webb & Hayes, Inc., in February, July, and December of 1946 was reported by Webb on his tax return for that year.

During the year 1947 Webb entered into 21 real estate sales transactions. Nineteen of the sales were of property located in the Villa Gardens subdivision. The gain realized by Webb from these sales during the taxable year 1947, as well as the dates of acquisition and sale, the division of equities, the purchaser, and other information, is shown in the table on page 1209.

During the year 1947, Webb received gain from the discounted value of the notes received in 1946 in payment for the sale of three parcels of real estate to Webb & Hayes, Inc. None of this gain was reported by Webb on his 1947 return.

During the taxable year 1948 the gain realized by Webb from sales of real estate, as well as the dates of acquisition and sale, the division of equities, and the purchaser, is as follows:

GAIN FROM REAL ESTATE SALES—1948

| 1948, date sold | Description | Date acquired | Cost | Sales price | Selling expense | Profit |
|---|---|---|---|---|---|---|
| July | Lots, Westfield Addition | May 1944 | $2,716.66 | $7,000.00 | | $4,283.34 |
| July | Lot, Sequoyah Hills (½ interest). | 1940 | | 85.65 | | 85.65 |
| Oct | Lot, Villa Gardens | 1937 | 91.18 | 400.00 | | 308.82 |
| Total | | | 2,807.84 | 7,485.65 | | |
| Total profit | | | | | | 4,677.81 |

At the time of his death, Webb owned approximately 300 vacant lots. He did not have any substantial estate other than real estate and did not own any stocks, bonds, or other liquid assets when he died.

On his tax returns for the years 1946, 1947, and 1948 Webb reported profit or loss from insurance business as follows:

1946 _____ [1]($1,870.49)
1947 _____ [1]( 1,205.56)
1948 _____ 854.34
[1] Loss.

For these 3 years Webb reported net gain from sale of capital assets as follows:

1946 _____ $6,745.88
1947 _____ 7,689.48
1948 _____ 7,375.25

During the years 1946 to 1948, inclusive, Webb and his family suffered several serious illnesses. Webb's hypertension became critical

GAIN FROM REAL ESTATE SALES

| 1947, date sold | Purchaser | Date acquired | Cost | Selling price | Selling expense | Profit | E. M. Webb interest | Remarks |
|---|---|---|---|---|---|---|---|---|
| 7/1 | D. C. Hampson | 1937 | $450.68 | $3,200.00 | $13.95 | $2,735.47 | --- | Lots 94/97, 118/21, Villa Gardens. |
| 10/23 | C. D. Lockett | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 134, Villa Gardens. |
| 10/23 | S. H. Shepard | 1937 | 53.40 | 600.00 | 27.78 | 518.82 | --- | Lot 91, Villa Gardens. |
| 10/23 | K. Cummings | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 133, Villa Gardens. |
| 10/23 | H. Carver | 1937 | 53.40 | 600.00 | 27.78 | 518.82 | --- | Lot 90, Villa Gardens. |
| 10/23 | B. Brookshire | 1937 | 53.40 | 600.00 | 27.78 | 518.82 | --- | Lot 83, Villa Gardens. |
| 10/23 | L. W. Kogley | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 129, Villa Gardens. |
| 10/23 | D. L. Fillers | 1937 | 60.64 | 600.00 | 27.78 | 511.58 | --- | Lot 135, Villa Gardens. |
| 10/23 | Paul Ousley | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 128, Villa Gardens. |
| 10/23 | H. B. Johnson | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 126, Villa Gardens. |
| 10/23 | W. H. Alton | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 125, Villa Gardens. |
| 10/23 | K. R. Moon | 1937 | 53.40 | 600.00 | 27.78 | 518.82 | --- | Lot 89, Villa Gardens. |
| 10/23 | A. R. Driver | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 131, Villa Gardens. |
| 10/23 | E. Stooksbury | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 124, Villa Gardens. |
| 10/23 | J. N. Williamson | 1937 | 53.40 | 600.00 | 27.78 | 518.82 | --- | Lot 87, Villa Gardens. |
| 10/24 | Fred Hethcock | 1937 | 59.27 | 600.00 | 27.78 | 512.95 | --- | Lot 132, Villa Gardens. |
| 10/24 | D. C. Hampson | 1937 | 59.27 | 575.00 | 4.10 | 511.63 | --- | Lot 122, Villa Gardens. |
| 11/11 | L. C. Martin | 1937 | 53.40 | 600.00 | 27.78 | 518.82 | --- | Lot 88, Villa Gardens. |
| 11/22 | J. R. Myers | 1937 | 53.40 | 600.00 | 27.78 | 518.82 | --- | Lot 86, Villa Gardens. |
| 12/22 | Webb & Hayes, Inc. | 1936 | 2,470.40 | 14,250.00 | 20.95 | 11,758.65 | --- | Lots 1/5, 18/30 Blk·DD 1/7, 10/22, Sequoyah H. |
| 12/22 | Sequoyah Hills Presby. Church | 1936 | 283.20 | 8,500.00 | 80.35 | 8,136.45 | --- | 2 tracts. |
| Total | | | 4,231.42 | 36,725.00 | 591.51 | 31,902.07 / 21,268.05 | $10,634.02 | |
| 1947 | H. A. Schubert, ⅔ interest | | | | | | | |
| 1947 | E. M. Webb, ⅓ interest | 1936 | 500.00 | 1,500.00 | | 1,000.00 | 500.00 | Building lot. |
| 1947 | E. M. Webb, ½ interest | 1936 | | | | 58.04 | 29.02 | Building lot. |
| Total profit | | | | | | | 11,163.04 | |

during this period. One of his children had meningitis, another had infectious mononucleosis, and Frankie had several illnesses requiring hospitalization. At times, Webb sold pieces of real estate to raise funds for paying hospital bills and medical expenses.

During the year 1949 Frankie owned a one-fourth interest in certain lots in a property known as Cherokee Gardens Subdivision. A one-half interest in this property was owned by Charles Edward Galbraith and the remaining one-fourth interest was owned by Elizabeth Hayes. There were delinquent city, county, and State real estate taxes on this property during the year 1949. Galbraith became a bankrupt and the trustee in bankruptcy was ordered by the referee in bankruptcy to pay $8,500 in discharge and settlement of the real estate taxes assessed against this property. Pursuant to the order of the referee the trustee made an agreement with Elizabeth Hayes and with Frankie that he would pay the taxes and that as lots from the property were sold, the trustee would reimburse himself out of the proceeds of the sales for that portion of the $8,500 tax payment which was owed by Elizabeth Hayes and Frankie as cotenants. Frankie's share of the taxes was $2,125. The trustee made the $8,500 real estate tax payment on October 14, 1949. On November 21, 1949, Frankie delivered a check for $425.71 to the trustee. This check, together with the proceeds of sale of Frankie's one-fourth interest in the Cherokee Gardens lots, reimbursed the trustee in full for the real estate taxes paid by the trustee which were attributable to her interest in the property. The trustee received the proceeds from the sale of the lots after making payment of the real estate taxes.

In 1949, Frankie paid $16 for an automobile license and made a State income tax payment of $4.50.

On the 1949 joint tax return filed by Frankie a deduction was taken for city and county taxes in the amount of $2,970.76.

#### OPINION.

The first issue is whether gains from the sale of real estate in the years 1946 to 1948, inclusive, are taxable as ordinary income or as capital gains. Respondent contends that Webb was engaged in the business of buying and selling real estate and that the gains from such sales are taxable as ordinary income. Petitioners, on the other hand, argue that the sales were unsolicited and unadvertised disposals of unimproved real estate held for capital appreciation and that the gains therefrom should be taxed as capital gains.

It is clear from the record that Webb was in the business of buying and selling undeveloped real estate for profit during the taxable years. During the years 1937 to 1945, inclusive, Webb made 173 sales of real estate, and this history of activity continued throughout the taxable

years 1946, 1947, and 1948. Total sales during the taxable period were substantial both in amount and in frequency. Moreover, after suffering a series of strokes in 1936, Webb spent most of his time dealing in real estate transactions. He owned stock in several real estate corporations and served as president of two of them. He maintained a desk at the office of a real estate title company and he conferred with business associates with regard to real estate deals. Frequently, Webb located real estate and purchased it with money furnished by H. A. Schubert. Then, as Schubert testified, "when the price was right" the property was sold and Webb divided the profits from such sales with Schubert. Finally, although Webb did have an insurance broker's license, his tax returns for the years 1946 and 1947 reveal that he reported a loss from insurance business in those years and that in 1948 he reported profit from insurance commissions of only $854.34, whereas for these 3 years he reported net gain from sale of capital assets, which consisted primarily of sales of real estate, in the respective amounts of $6,745.88, $7,689.48, and $7,375.25. Thus, even though Webb may not have aggressively promoted the sale of real estate, nevertheless the frequency and volume of such sales, his substantial holdings of undeveloped real estate which were acquired primarily for the purpose of resale whenever a satisfactory profit could be made, and the absence of any other occupation from which he derived substantial income convince us that Webb was a dealer in real estate during each of the years here in issue and that the gains he derived from real estate sales in these years are taxable as ordinary income. *D. L. Phillips*, 24 T. C. 435.

Petitioners have conceded that assessment and collection of the deficiency determined for 1946 is not barred by limitations if respondent has proved facts extending the period of limitations to 5 years under section 275 (c) of the 1939 Code.[1] The next question therefore, is whether respondent has proved that Webb omitted from his 1946 income tax return income in an amount properly includible therein which was in excess of 25 per centum of the amount of gross income stated in the return.

At the outset, we note that in the determination of deficiency for the year 1946, respondent included in Webb's income ordinary gain from real estate sales in the amount of $13,759.99. We also note that Webb reported in his 1946 return gains from the sale of real estate in the

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—

\* \* \* \* \* \* \*

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

amount of $8,973.31, but excluded one-half of this amount from gross income because he reported it as long-term capital gain. Furthermore, Webb overstated the cost of certain items of real estate sold in 1946 with the result that respondent added an additional $1,794.89 to his corrected income for that year. Respondent relies on the exclusion of one-half of long-term capital gain and the overstatement of cost of some of the real estate sold to establish that Webb omitted at least 25 per cent of the amount of gross income stated in the return.

In the recent case of *Colony, Inc.* v. *Commissioner*, 357 U. S. 28, decided June 9, 1958, the Supreme Court distinguished between the understatement of gross income by reason of the overstatement of the cost of certain lots of land which were sold and the omission of specific items in the computation of gross income, and held that the 5-year period of limitations provided by section 275 (c) of the Internal Revenue Code of 1939 did not apply. In so holding, the Court pointed out that where a taxpayer omits to report some taxable item the Commissioner is at a special disadvantage in detecting errors, since the return on its face provides no clue to the existence of the omitted item. Hence, the need for the additional 2 years to investigate tax returns. Where, however, the understatement of tax arises from an error in reporting an item disclosed on the face of the return, the Commissioner is at no such disadvantage. Here, Webb reported the sales of the real estate mentioned but computed his income therefrom on the long-term capital gains basis. It is accordingly clear that any understatement of income that may have resulted from Webb's computation of the gains is not an omission from gross income within the meaning of section 275 (c). *Colony, Inc.* v. *Commissioner, supra.*

Respondent further argues, however, that Webb omitted from his 1946 return income from three sales of real estate in an amount which is in excess of 25 per cent of the amount of gross income stated in the return. The parties have stipulated that these sales were made in 1946 to Webb & Hayes, Inc. Petitioners contend, however, that the alleged gains from these three sales were represented by deferred purchase money notes and that no showing has been made by respondent that Webb collected any part of these notes in 1946.

Petitioners' contentions are without merit. The parties have stipulated the correctness of a schedule appearing in the notice of deficiency for 1946 which shows the gain realized by Webb from the sale of real estate during the taxable year 1946, the dates of acquisition and sale, the division of equities, and other information. This schedule has been incorporated into our findings and reflects that Webb made three sales of groups of real estate lots to Webb & Hayes, Inc., in 1946; that the total cost of the lots was $35,400, and that the selling price was $59,000. The schedule also shows that notes rather than cash were received for these lots. Notes totaling $57,500 were valued

at 73.60083 per cent of $42,320.48, with the result that a cash equivalent profit of $7,644.68 was derived from the receipt of these notes in 1946. Another note, in the amount of $1,500, was valued at 97.0873 per cent, or $1,456.31, with the result that a cash equivalent profit of $732.11 was derived from the receipt of this note in 1946. The total cash equivalent profit derived from these sales in 1946 was $8,376.79, of which Webb received one-half, or $4,188.39. The remainder of the profit from the discounted value of the notes was received in 1947.

It has been held that where property is exchanged for notes, income is realized to the extent that the fair market value of the notes exceeds the cost of the property. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Cherokee Motor Coach Co.* v. *Commissioner*, 135 F. 2d 840 (C. A. 6, 1943). Petitioners have stipulated that in 1946, notes in the aggregate amount of $59,000 were received from the sale of certain lots to Webb & Hayes, Inc. Petitioners have further stipulated that the fair market value of these notes in 1946 was $43,776.79 and that the total cost of the lots was $35,400. The stipulated facts further show that a cash equivalent profit of $8,376.79 from the sale of the lots for the notes was received in 1946 and that Webb was entitled to one-half of this amount, or $4,188.39. Since Webb did not report any of this amount on his income tax return for 1946, he omitted this amount from his return. This amount is in excess of 25 per cent of $4,875.39, the amount of gross income reported by Webb on his 1946 return, and the 5-year period of limitations provided by section 275 (c) applies. Accordingly, assessment and collection of the deficiency for 1946 is not barred by limitations.

The third issue is whether respondent erred in disallowing as a medical expense deduction under section 23 (x) of the 1939 Code [2] the cost of a special diet consumed by Webb during the period 1946 to 1949. The facts show that Webb suffered from hypertension and was on a diet consisting of beefsteaks with kidney fat, avocados, pears, grapefruit, and potatoes cooked in a certain manner. Petitioners insist that this diet was prescribed by a physician to prolong Webb's life, that it was a part of Webb's nutritional needs, and that the cost of such diet was therefore a deductible medical expense. However, petitioners offered no evidence other than Frankie's testimony that the diet was prescribed by a physician solely for the alleviation or treatment of an illness. No medical testimony was offered. Moreover, it is clear that the diet represented Webb's daily nutritional requirements. He consumed the diet three times daily and ate nothing else. No

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(x) MEDICAL, DENTAL, ETC., EXPENSES.—Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent \* \* \*

evidence has been presented to show that the meat diet was not taken as a substitute for food normally consumed and that the meat diet was consumed in addition to the regular diet of the patient. Under these circumstances, we hold that petitioners have failed to show error in respondent's disallowance of the cost of the diet as a deductible medical expense. *Doris V. Clark*, 29 T. C. 196, approving Rev. Rul. 55–261, 1955–1 C. B. 312.

The final issue is whether respondent erred in disallowing entirely a deduction for city and county taxes for the year 1949. A deduction for city and county taxes in the amount of $2,970.76 was claimed on the 1949 return. However, by amended petition, petitioners claim that a deduction in the amount of $2,145.50 should have been allowed. Respondent argues that no deduction for city and county taxes is allowable.

Section 23 (c) of the Internal Revenue Code of 1939 [3] provides a deduction for taxes paid or accrued during the taxable year. The facts show that in 1949 Frankie owned a one-fourth interest in certain lots and that city, county, and State taxes in the amount of $8,500 were delinquent on this property. Frankie's share of these delinquent taxes was $2,125. The owner of a one-half interest in this property became bankrupt and pursuant to the order of the referee in bankruptcy the trustee in bankruptcy entered into an agreement with Frankie and another cotenant that he would pay the $8,500 in taxes due and would reimburse himself out of the proceeds of the sale of the property for that portion of the taxes owed by the other cotenants. The trustee made the $8,500 payment on October 14, 1949. On November 21, 1949, Frankie delivered a check for $425.71 to the trustee. According to the testimony in the record, this check, together with the proceeds of sale of Frankie's one-fourth interest in the property, reimbursed the trustee in full for Frankie's share of the taxes. Further evidence showed that Frankie paid $16 for an automobile license and $4.50 for State income tax.

It is clear that petitioners are entitled to deduct $2,145.50 for taxes paid during 1949. The evidence of payments of $16 for auto license and $4.50 for State income tax is uncontroverted and these items are clearly deductible. Furthermore, the sum of $2,125, Frankie's share of the $8,500 in delinquent city, county, and State real estate taxes on property in which she owned a one-fourth interest, is deductible by her and not by the trustee in bankruptcy who made the payment. She was the owner of the one-fourth interest upon which the tax of

---

[3] SEC. 23. DEDUCTION FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*   \*   \*   \*   \*   \*

(c) TAXES GENERALLY.—

 (1) ALLOWANCE IN GENERAL.—Taxes paid or accrued within the taxable year, \* \* \*

$2,125 was levied and the obligation to pay the tax was upon her. Therefore, she was the taxpayer entitled to take the deduction for the taxes paid on her property. *Magruder* v. *Supplee*, 316 U. S. 394; *Rita S. Goldberg*, 15 T. C. 696.

*Decisions will be entered under Rule 50.*