HARRY LELAND BARNSLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64178.  Filed March 31, 1959.

*Jack Bryant, Esq.*, for the petitioner.
*Douglas M. Moore, Esq.*, for the respondent.

#### OPINION.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income tax of $70,152.85 and $47,449.05 for the years 1953 and 1954, respectively.

The only issue for decision is whether petitioner properly may report amounts received as advance royalties or bonuses in the form of cash and negotiable notes on an oil and gas lease for a primary period of 10 years executed July 17, 1953, on the installment basis or must report the total bonus in 1953.

All of the facts have been stipulated and the stipulated facts are incorporated herein and found as facts.

Petitioner is an individual with his principal office at Abilene, Texas.  His income tax returns for 1953 and 1954 were prepared on a cash basis and filed with the district director of internal revenue at Dallas, Texas.

On July 17, 1953, petitioner, together with his mother and sister, executed a lease of certain mineral interests in 480 acres of land in Texas to the Atlantic Refining Company for a primary term of 10 years.

The lease contained provisions whereby royalties of one-eighth of the oil produced and saved and one-eighth of the gas produced, sold, or used were to be paid to lessors.  Provisions were also made for the commencement of drilling by the lessee, certain delay rentals, termination on certain conditions, reservations of certain overriding royalties, and other provisions not herein important.

As consideration for his part in the lease, petitioner received in 1953: (a) Cash in the amount of $37,777.78; and (b) nine negotiable notes, the first 8 in the face amount of $16,790.12 each and the ninth in the face amount of $16,790.15.  The first note was due and payable on January 15, 1954, and one of the remaining notes was due and payable on the 15th day of January of each respective year thereafter

through 1962. Each of the 9 notes bore interest from maturity at the rate of 6 per cent per annum, but did not bear interest prior to maturity.

It is stipulated that at the date of their receipt by the petitioner in 1953, the 9 notes had fair market values as follows:

| Due date Jan. 15 | Face amount of note | Fair market value when received in 1953 | Due date Jan. 15 | Face amount of note | Fair market value when received in 1953 |
|---|---|---|---|---|---|
| 1954 | $16,790.12 | $16,144.35 | 1959 | $16,790.12 | $13,269.48 |
| 1955 | 16,790.12 | 15,523.41 | 1960 | 16,790.12 | 12,759.11 |
| 1956 | 16,790.12 | 14,926.35 | 1961 | 16,790.12 | 12,268.38 |
| 1957 | 16,790.12 | 14,352.26 | 1962 | 16,790.15 | 11,796.52 |
| 1958 | 16,790.12 | 13,800.25 | | | |
| | | | | 151,111.11 | 124,840.11 |

The cash payment of $37,777.78 the petitioner received from the Atlantic Refining Company in 1953 was included in the $51,278.58 in oil royalties and lease rentals that were reported on petitioner's 1953 return. None of the 9 notes and no part of the value thereof was reported as income in the 1953 return.

In 1954 petitioner received $16,790.12 from the Atlantic Refining Company in complete satisfaction of the note due on January 15, 1954, and reported this payment as ordinary income subject to depletion in his 1954 return.

On brief, the Commissioner—

contends that the sum of $124,840.11, the fair market value of the nine, negotiable, promissory notes the petitioner received from the Atlantic Refining Company in 1953 as advance royalty for his leasing of certain oil, gas, and other mineral interests to that company, was taxable to the petitioner in 1953 as ordinary income under the provisions of section 22(a), Internal Revenue Code of 1939, subject to a deduction for percentage depletion in the amount of $34,331.03 under the provisions of sections 23(m) and 114(b)(3) of that Code. The Commissioner contends that said notes were the equivalent of cash in that amount and that the petitioner, a cash basis taxpayer, was required to report said cash equivalent as royalty income in 1953, the year he received the said notes. * * *

The petitioner, on the other hand, contends that the transaction constituted an installment sale or other disposition of personal property or real estate and was properly reported on the installment basis under section 44(b), I.R.C. of 1939.[1] On this phase of the argument

---

[1] SEC. 44. INSTALLMENT BASIS.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALITY [PERSONALTY].—In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000.00, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price * * * the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

the Commissioner's position is that the transaction is not an installment sale or other disposition within the statutory meaning.

So far as we can see, the transaction under consideration is an example of the classical form of oil and gas lease and for purposes of the Federal income tax law is not a sale or conveyance of a property interest giving rise to capital gain or loss, and this, irrespective of the laws of the various States. *Burnet* v. *Harmel*, 287 U.S. 103. And see Arthur H. Kent, "When Is a Transaction a Sale or a Lease?", P.-H. Oil and Gas Taxes par. 1002.4. Under such a lease the cash and other consideration paid the lessor upon execution of the lease and before actual production is treated as an advance royalty or bonus and is ordinary income subject to percentage depletion in the year received. *Herring* v. *Commissioner*, 293 U.S. 322.

Though there may be many technical differences between such advance bonuses under oil and gas leases and ordinary rentals, we think for our purposes they should receive essentially the same tax treatment. The Supreme Court in *Burnet* v. *Harmel, supra,* said of a transaction such as we have here:

The payment of an initial bonus alters the character of the transaction no more than an unusually large rental for the first year alters the character of any other lease, * * *

Moreover, the statute speaks of a "sale," and these leases would not generally be described as a "sale" of the mineral content of the soil, using the term either in its technical sense or as it is commonly understood. Nor would the payments made by lessee to lessor generally be denominated the purchase price of the oil and gas. By virtue of the lease, the lessee acquires the privilege of exploiting the land for the production of oil and gas for a prescribed period; he may explore, drill, and produce oil and gas, if found. Such operations with respect to a mine have been said to resemble a manufacturing business carried on by the use of the soil, to which the passing of title of the minerals is but an incident, rather than a sale of the land or of any interest in it or in its mineral content. * * *

Though the Court was there dealing with the question of capital gain from the sale or exchange of a capital asset, we see no reason why the above characterization of an initial bonus under an oil and gas lease should not be apropos here.

So analyzed, the cash payment together with the 9 notes received by the petitioner in 1953 would appear to be in essence the same as if petitioner had received in that year a substantial advance payment of rent. It is stipulated that the notes had a fair market value and we are not constrained to disturb the Commissioner's determination that the amount so stipulated less depletion should be treated as income of the petitioner in 1953. Section 22(a), I.R.C. 1939, specifically taxes income of whatever kind and whatever form paid, and a cash basis taxpayer must report the cash equivalent, i.e., the fair market value, of property received in lieu of cash. Regs. 118, secs. 39.41–1 and 39.42–1. It has been held many times that notes having a fair market value are

properly reported as income at that value in the year of receipt. *Bird-neck Realty Corporation*, 25 B.T.A. 1084; *Cherokee Motor C. Co.* v. *Commissioner*, 135 F. 2d 840 (C.A. 6, 1943), affirming a Memorandum Opinion of this Court; *Estate of Eugene Merrick Webb*, 30 T.C. 1202; *Albert J. Fihe* v. *Commissioner*, 265 F. 2d 511 (C.A. 9, 1958), affirming a Memorandum Opinion of this Court.

By virtue of the analogy to a large advance payment of rent made in *Burnet* v. *Harmel, supra*, we think the advance royalty or bonus should be so treated here. Rent is generally taxable in the year received by a cash basis taxpayer, and prepaid or advance rent is also taxable in the year of receipt. See 2 Mertens, Law of Federal Income Taxation secs. 12.30, 12.49. Here petitioner received $37,-777.78 in cash and 9 negotiable notes having a stipulated fair market value of $124,840.11 in 1953. No strings of any kind were attached to the notes. We think the notes were the equivalent of cash and constituted taxable income in the year 1953 rather than in the years in which they are to mature or be paid.

It is, of course, possible under an oil and gas lease containing proper provisions to have a bonus payable and taxable in installments, *Alice G. K. Kleberg*, 43 B.T.A. 277. The case before us does not constitute such an arrangement. In the *Kleberg* case the contractual agreement was to pay a named amount in two payments as bonus. It was not a case like the one here where cash and negotiable notes, the latter being the equivalent of cash, representing the bonus were received in the same year by the taxpayer.

Petitioner, however, argues that this was an installment "sale or other disposition" of personalty or real estate under section 44(b), and that he is thus permitted to report his receipts on the installment basis. As pointed out above, we think that *Burnet* v. *Harmel* effectively disposes of his argument insofar as a "sale" is concerned. Under that case the transaction was not a sale. Neither do we think it was any "other disposition" of personalty or real estate. To us the term "other disposition" is qualified by its antecedent "sale," and thus has reference to that type of transaction which, when finally completed, will result in a disposition of title to property, though it may, at the time of its consideration for tax purposes, be something less than a completed sale. See *Charles J. Derbes*, 24 B.T.A. 276, affd. (C.A. 5) 69 F. 2d 788. We do not think this transaction was such a disposition. Under *Burnet* v. *Harmel*, it was a lease and not a sale and the amounts received, though not technically rent, were more akin to rent than to payments on the purchase price of personalty or real estate. We hold the transaction is not covered by section 44(b).

*Decision will be entered under Rule 50.*