## WILSON BROS. & CO. v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 9781, 9782.

Circuit Court of Appeals, Ninth Circuit.

Dec. 20, 1941.

Adolphus E. Graupner and Louis Janin, both of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Arthur A. Armstrong, Sewall Key, and Carl J. Marold, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

These are consolidated cases, pending upon petitions to review decisions of the Board of Tax Appeals upholding the Commissioner's determination of deficiencies in petitioner's income taxes for the years 1932, 1933 and 1934. [1]

1. The first question raised is whether there is evidence to sustain the Board's finding that petitioner was availed of to avoid the imposition of surtaxes. The pertinent statutes, § 104, Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 508; § 102, Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, page 690, provide that if a corporation is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders, through the medium of permitting its gains and profits to accumulate instead of being distributed, it shall be subject to an additional tax at specified rates. If the corporation is a mere holding or investment corporation, or if its gains or profits are permitted to accumulate beyond the reasonable needs of the business, either fact, says the statute, shall be prima facie evidence of the purpose to avoid the tax.

Petitioner is a family corporation controlled by the brothers F. A. and W. T. Wilson. Prior to the organization of petitioner in 1929, the Wilsons had done business as partners with a capital investment of about $1,500,000. The corporation was organized to carry on the business of logging, milling and dealing in lumber, and operating steamships. It had an authorized capital stock of 200,000 shares of a par value of $25 each; but only 40 shares were ever issued, these being purchased by the two brothers in equal amounts for a total of $1,000.

Soon after its formation petitioner was forced by the oncoming depression to restrict its activities. It does not appear ever to have re-entered the logging or milling business, but engaged in a comparatively small way in the marketing of lumber. Its gross sales ranged from $28,000 in 1932 to $170,000 in 1934. In all three years it sustained net losses in its operations.

Despite its operating losses, petitioner enjoyed substantial net earnings for the years in question, these being attributable to its large investments in securities from which it derived annual dividends ranging from $18,000 to $25,000. The securities were purchased with cash and other assets contributed by the shareholders. Their market value varied from a little less than half a million in 1932 to over $800,000 in 1934. In addition petitioner had substantial amounts of cash on hand, [2] and its undivided profits were, in round figures, $19,-

---

[1] The deficiencies total $32,229.07.

[2] 1932, $96,638; 1933, $9,186; 1934, $73,707.

000 in 1932, $36,000 in 1933, and $25,000 in 1934. Its only liabilities, aside from capital stock in the amount of $1,000, were small sums in accounts payable. During the years in question it paid no dividends, nor did it pay any salaries to its two officers; but the Wilsons were in the habit of drawing upon the corporation in substantial amounts, and these withdrawals sometimes exceeded the undivided profits. Except for a tax of $150 paid by one of the Wilsons in 1932, no income taxes were paid by either of them during the period.

The Board found that while petitioner was not formed for the purpose of enabling its shareholders to avoid personal surtaxes, it was availed of for that purpose; that during the years in question petitioner was primarily a holding or investment company, and that its gains or profits were accumulated beyond its reasonable needs. Petitioner contends that the evidence fails to support these findings. It says that the accumulation of gains and profits was needed for future expansion, that it was its intention always to reengage in business on a scale comparable with that previously carried on by the partnership; and that about $1,500,000 would be required for this purpose. However, on the showing made, the Board was not obliged to conclude that there was any immediate need for conserving profits. And it is plain that the corporation was used by the brothers largely as a family pocketbook.

■■ Petitioner further argues that there was no actual intent to escape the tax, and that the lack of such motive is shown by the fact that the shareholders would have paid little if any surtaxes even if the corporation had currently distributed all of its earnings. But the individual returns of the two brothers were not in evidence; and, since the burden was on petitioner, it is to be assumed that the slightest increase in the income of either would have resulted in tax liability. Upon this basis it is apparent that a distribution of earnings would have placed both shareholders in the surtax brackets during 1933 and 1934, and that W. T. Wilson, at least, would have paid in a surtax in 1932. While the amounts of such taxes would have been comparatively small, the weight to be given this circumstance was for the Board.

2. In its 1934 return petitioner took a deduction of $5,000 on a debt owed by the Woodhead Lumber Company of California and claimed to have become worthless to

that extent in that year. In the same year it took a deduction of $5,500 on bonds of the Kentucky Fuel & Gas Corporation alleged to have become worthless in that amount. The Board sustained the Commissioner's disallowance of the first item on the ground that the debt was not shown to have become worthless to any extent, and sustained the disallowance of the second because of inadequate proof of worthlessness and because the evidence failed to show that the claimed worthlessness did not exist in a prior year.

■■ The total debt of the Woodhead Lumber Company was in excess of $43,000. It was secured at least to the extent of $25,000. The only evidence on the issue of the worthlessness of this debt is the testimony of one of the Wilsons, who stated that he personally examined the debtor's books in 1934 and concluded that petitioner would lose at least $5,000 on the account. No concrete evidence in corroboration of the witness, such as a balance sheet of the debtor corporation, was offered; and the testimony on the subject is meager and vague. Furthermore, good reasons appear for disbelieving the witness, and naturally his credibility was for the Board.

■ In respect of the other deduction, it appears that the bonds were secured by a first mortgage, and although the obligor had been in receivership since 1931, it was an operating concern. The bid price of its bonds was shown to have been $74 in 1930, $5 in 1931, $1.25 in 1932, $2 in 1933, and $4.50 in 1934. The record thus tends to show that the worthlessness of the bonds, if any, occurred prior to the year in which the partial charge-off was made.

■ The statute, § 23(k) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 673, provides that "when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction." The question whether a taxpayer may take a partial bad debt deduction is thus committed to the sound discretion of the Commissioner, and his judgment is controlling unless it is plainly arbitrary or unreasonable. Olympia Harbor Lumber Co. v. Commissioner, 9 Cir., 79 F.2d 394; United States v. Beckman, 3 Cir., 104 F.2d 260, certiorari denied sub. nom., Doty v. United States, 308 U.S. 593, 60 S.Ct. 123, 84 L.Ed. 496; Stranahan v. Commissioner, 6 Cir., 42

F.2d *729,* certiorari denied 283 U.S. 822, 51 S.Ct. 346, 75 L.Ed. 1437.

The applicable regulation (Treas.Reg. 86, Art. 23 (k)–1) provides that "before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate with a reasonable degree of certainty, the amount thereof which is uncollectible." The proof here fell far short of meeting the required test. Certainly the disallowance of the deductions was neither arbitrary nor unreasonable.

3. In 1929 petitioner was given a ⅕ interest in a certain steamship. The donor, in turn, had received the interest as a gift in 1917, at which time it had a cost basis of $40,000 and a fair market value of $79,000. The taxpayer's petition presents the question of law—whether, under the applicable statute, petitioner in computing depreciation, is entitled to adopt the market value. The Board held that it is required to use the cost figure. No question is raised as to the amount of depreciation allowable up to 1932, or the applicable rate to be applied during the years in question.

The Revenue Act of 1932[3] provides, in effect, that the basis upon which depreciation is to be allowed shall be the basis determined under § 113(a) as adjusted under § 113(b), 26 U.S.C.A. Int.Rev.Acts, pages 514, 518. Section 113(a) provides that the basis of property shall be the cost of the property, except that—"(2) *Gifts after December 31, 1920.* If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. * * *"

Section 113(a) (4) provides: "(4) *Gift or transfer in trust before January 1,*

*1921.* If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition. * * *"

Reduced to its simplest terms, petitioner's argument is that where A makes a gift of property, prior to 1921, to B, who, after 1920, gives it to C, the latter takes B's basis (market value at time of acquisition) rather than A's (cost).

We do not agree with this argument. Since the property here was acquired by petitioner after 1920, the governing statute is § 113(a) (2), which provides that the basis shall be the same as it would be in the hands of "the donor or the last preceding owner by whom it was not acquired by gift". This means, we think, that the donor's basis is to be used except where there have been successive gifts, in which case the taxpayer must use the basis of the last preceding owner who did not acquire the property by gift. Thus, if the donor is also a donee, the basis is the cost of the property to the last preceding owner by whom it was not acquired by gift and not the value at the date of acquisition by the donor where he acquired the property prior to 1921. Wurlitzer v. Helvering, 6 Cir., 81 F.2d 928. In other words, the "donor" mentioned in § 113(a) (2) can never be a donee under § 113(a) (4), because such donor must always be a person by whom the property was acquired by gift. As applied to the present case, the section requires taxpayer to use the cost basis in the hands of A.

This view reflects the will of Congress. The purpose of § 113(a) (2), and its forerunners, was to prevent tax free increments in value.[4] If we were to adopt

---

[3] Since the pertinent provisions of the 1934 Act are substantially the same as those of the 1932 Act, they need not be quoted.

[4] In discussing § 202(a) (2) of the Revenue Act of 1921, 42 Stat. 229, which contained provisions substantially similar to those embodied in §§ 113(a) (2) and 113 (a) (4) of the 1932 Act, the House Committee on Ways and Means made the following observation: "An essential change, however, is made in the treatment of property acquired by gift. No explicit rule is found in the present statute for determining the gain derived or the loss sustained on the sale of property acquired by gift; but the Bureau of Internal Revenue holds that under existing

law the proper basis is the fair market price or value of such property at the time of its acquisition. This rule has been the source of serious evasion and abuse. Taxpayers having property which has come to be worth far more than it cost give such property to wives or relatives by whom it may be sold without realizing a gain unless the selling price is in excess of the value of the property at the time of the gift. The proposed bill in paragraph (2) of subdivision (a) provides a new and just rule, namely, that in the case of property acquired by gift after December 31, 1920, the basis for computing gain or loss shall be the same as the property would have in the hands of the donor or the last preceding owner

petitioner's construction of the statute, the increment in value of the ship while in the hands of A (its original owner) would go tax free.

■ Petitioner makes the further assertion that § 113(a) (2), if construed in this way, is unconstitutional, for the reason that B had a vested interest in the property, including the right to use the basis provided in § 113(a) (4). But regardless of the basis used by B, Congress clearly had power to set up any basis it saw fit with respect to C, whose interest did not arise until long after the crucial provision first appeared in the revenue laws.[5] See Taft v. Bowers, 278 U.S. 470, 49 S.Ct. 199, 73 L. Ed. 460, 64 A.L.R. 362.

■ 4. In his deficiency notices the Commissioner stated that "the understatement of tax for the year 1934 is attributable to negligence and in accordance with the provisions of § 293(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code § 293(a) a penalty of 5 percent of the deficiencies attached." The Board in turn concluded that the application of the negligence penalty was required because of the "remarkable way" in which the petitioner kept its books. It observed, that "obviously a part of the deficiency was due to 'negligence or intentional disregard of rules and regulations' without which the tax in this case would have been ascertained without all of the difficulty encountered."

The statute in question provides that "if any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud," 5 percentum of the total amount of the deficiency shall be assessed and collected, in addition to the deficiency. It is to be observed that the Commissioner had not determined that there had been any "intentional disregard of rules and regulations", and no issue in this respect was before the Board. Neither the Commissioner in his deficiency notices nor the Board in its findings has pointed out any specific negligence on the part of the taxpayer to which the deficiencies in tax might be attributable. It may have been obvious to the Board that the situation required the application of the negligence penalty, but it is far from being obvious to us. The government concedes the lack of a specific finding on the subject, but makes no suggestion as to what the proper finding should be. On the basis of the record we have not been able to discover any "understatement of tax attributable to negligence" as claimed by the Commissioner, or as contemplated by the statute. Petitioner's bookkeeping methods, criticised by the Board, do not appear to have anything to do with the penalty for negligence imposed by the Commissioner.

The decisions of the Board are affirmed except as to the imposition of the negligence penalty, in which respect they are reversed.

---

by whom it was not acquired by gift." Report No. 350, 67th Congress, 1st Session, p. 9. See also Report No. 275 of the Senate Finance Committee, 67th Congress, 1st Session, p. 11.

[5] The pertinent language of § 113(a) (2) first appeared in the Revenue Act of 1921, § 202(a) (2), and is found also in the Act of 1928, § 113(a) (2), 26 U.S.C.A. Int.Rev.Acts, page 380.