ESTATE OF HARRIS FAHNESTOCK, DECEASED, GEORGETTE G. V. FAHNE-
STOCK, HARRIS FAHNESTOCK, JR., AND JAMES F. MIMNAUGH, AS
EXECUTORS OF THE LAST WILL AND TESTAMENT OF HARRIS FAHNE-
STOCK, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 110172. Promulgated September 27, 1943.

*Joseph Lorenz, Esq.,* and *A. W. Siegrist, Esq.,* for the petitioners.
*Thomas R. Charshee, Esq.,* for the respondent.

OPINION.

LEECH, *Judge:* Throughout the trial it was claimed, on behalf of the respondent, that the petitioners had claimed a "total" and not a "partial" bad debt deduction. On brief it is apparently conceded that the deduction involved is a partial bad debt deduction and was so claimed on the return. We proceed on that assumption.

The petitioners contend they are entitled to a partial bad debt deduction, in the sum of $147.666.75, as so claimed. They base this contention on the premise that section 23 (k) (1) of the Revenue Act of 1938, which was in effect when their return for the decedent for the period in 1939 preceding his death was filed, applies. For the purposes of this discussion we assume without deciding that, if that be so, petitioners would be entitled to deduct more of the debt than that deductible under section 23 (k) (1) of the 1938 act as amended by section 124 (a) of the Revenue Act of 1942, which respondent argues is controlling. See *Premier-Pabst Co.* v. *Grosscup*, 298 U. S. 226.

Section 124 (a) of the Revenue Act of 1942 [1] amended section 23 (k) (1) of the Revenue Act of 1938 [2] by substituting in the first sentence of that section the words "which become" for "ascertained to be" and "which becomes worthless" for "charged off." This amendment was expressly made retroactive to the taxable years beginning after December 31, 1938. Revenue Act of 1942, sec. 124 (d). [3]

It is admitted that, literally construed, the effect of this legislation here would be to limit the contested deduction to that part of the stipu-

---

[1] SEC. 124. DEDUCTION FOR BAD DEBTS, ETC.

(a) GENERAL RULE.—Section 23 (k) (relating to bad debts and securities becoming worthless) is amended to read as follows:

"(k) BAD DEBTS.—

"(1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part which becomes worthless within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. * * *

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

* * * * * * *

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts ascertained to be worthless. and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount nor in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank. as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection.

[3] SEC. 124. DEDUCTION FOR BAD DEBTS, ETC.

* * * * * * *

(d) EFFECTIVE DATE OF AMENDMENTS.—The amendments made by this section adding the last sentence of section 23 (k) (1) and adding section 23 (k) (4) shall be effective only with respect to taxable years beginning after December 31, 1942 ; the amendment inserting section 23 (k) (5) and amendments related thereto shall be applicable only with respect to taxable years beginning after December 31. 1941 ; *and the other amendments made by this section shall be effective with respect to taxable years beginning after December 31, 1938.* [Emphasis supplied.]

lated debt of $164,743.75 which became worthless between January 1 and October 11, 1939.

Petitioners, however, argue that, (1) since section 124 (a) of the Revenue Act of 1942 is remedial legislation, it should not be literally construed but should be interpreted as not applying "to income tax returns filed prior to its enactment, and in which returns a claim of a partially bad debt was timely made," and (2) if literally construed, the section offends the due process clause of the Fifth Amendment to the Constitution.

Neither position, we think, is sound. That the purpose of the enactment was remedial and its application harsh gives us no authority alone to go beyond a clear and unambiguous expression of Congress. *United States* v. *Missouri Pacific Railroad Co.*, 278 U. S. 269. The meaning of section 124 (a) is wholly transparent, so far as here involved. With some particularity, Congress, by the last clause of section 124 (d), made that amendment effective retroactively to the taxable years beginning after December 31, 1938. Though without important bearing because of those circumstances, it may be noted that no committee report which accompanied the 1942 Revenue Act while before Congress dims that clarity. Report of Ways & Means Committee, H. Rept. No. 2333, 77th Cong., 2d sess.; Report of Senate Finance Committee, Rept. No. 1631, 77th Cong., 2d sess.; Conference Report, Rept. No. 2586, 77th Cong., 2d sess.

Of course the retroactive feature of the legislation does not itself render the amendment unconstitutional. *Welch* v. *Henry*, 305 U. S. 134. The right to deductions in the computation of Federal income tax is a matter of legislative grace. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. Thus such right here had not vested but was subject to modification or repeal by Congress which granted it. See *Manhattan General Equipment Co.* v. *Commissioner* and *Collier Service Corporation* v. *Commissioner*, 76 Fed. (2d) 892; affd., 297 U. S. 129. See also *Regla Coal Co.* v. *Bowers*, 37 Fed. (2d) 373; affd. *sub nom. Graham & Foster* v. *Goodcell*, 282 U. S. 409.

The respondent contends that under section 23 (k) (1) of the 1938 Act, as thus amended, it was within his discretion to determine the amount of the deduction for a partially worthless debt. That discretion, however, is not absolute, but its exercise must be based upon reason. It can not be arbitrary, even though presumptively correct. *United States* v. *Beckman*, 104 Fed. (2d) 260; *Olympia Harbor Lumber Co.* v. *Commissioner*, 79 Fed. (2d) 394; *Stranahan* v. *Commissioner*, 42 Fed. (2d) 729; certiorari denied, 283 U. S. 822. In determining that no part of the admitted debt here became worthless in 1939 and so denying any deduction therefor to petitioners, we think, the Commissioner was purely arbitrary and, therefore, abused his

discretion. *Santa Monica Mountain Park Co.* v. *United States*, 20 Fed. Supp. 209; affd., 99 Fed. (2d) 450.

To what extent did the stipulated debt become worthless during the taxable year? Certainly it did not become worthless in 1939 in the amount of $147.667.75, as claimed by the petitioners on their return. In 1937 the debtor was unable to comply with the demand of the decedent for payment, and in 1938 the interest due the debtor in the brokerage firm of Fahnestock & Co. against which the loaned securities had been pledged passed out. The debtor had no other property and then owed $13.000, was obligated to pay $400 monthly alimony, and was unemployed. But he did have an annual income of $8.770.72 as life beneficiary of four trusts, and interest income of $1,333.32. In such circumstances he offered decedent $2,500 in cash and $47,500 in notes payable over a ten-year period in payment of his obligation. Schermerhorn reasonably believed himself able and intended to pay these notes. This offer was rejected. But we think it is sufficient here with the other evidence to support our finding that at the close of 1938 the admitted debt had a value of $50,000. During the year 1939, the financial condition of the debtor became progressively worse, but no settlement of the debt was effected during the lifetime of the decedent. In March 1940 the petitioners settled the debt for $17.077. This was the value at the date of decedent's death on October 11, 1939. fixed for this debt in both the Federal estate tax return filed for the decedent by the petitioners and the New York State estate tax return. That valuation was not disturbed by the respondent upon his audit of the Federal estate tax return. That same value was used by the petitioners in basing their claim for their contested partial bad debt deduction on the income tax return of the decedent for the period January 1 to October 11, 1939. We think this record amply supports our finding that on October 11, 1939, the date of decedent's death. the debt had a value of $17,077. *Sawyer Tanning Co.* v. *O'Keefe Shoe Co.*, 23 Fed. (2d) 717; *First Citizens Bank & Trust Co.* 32 B. T. A. 335. Petitioners are therefore entitled to deduct the difference between $50,000 and $17.077 or the sum of $32,923 as that part of a debt which became worthless during the taxable period January 1 to October 11, 1939.

Reviewed by the Court.

*Decision will be entered under Rule 50.*