SIKA CHEMICAL CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6727-73.    Filed August 7, 1975.

*G. Norman Widmark,* for the petitioner.
*Gerald J. O'Toole,* for the respondent.

FORRESTER, *Judge:* Respondent has determined the following deficiencies in petitioner's Federal income taxes:

| TYE Dec. 31— | Deficiency |
| --- | --- |
| 1964 | $11,378.01 |
| 1965 | 8,986.46 |
| 1966 | 60,504.08 |
| 1967 | 37,201.28 |

Because of a concession by petitioner, the only issue remaining for our decision is whether petitioner was entitled to bad debt loss treatment in 1967 for a part of certain advances made to its wholly owned Canadian subsidiary.

#### FINDINGS OF FACT

All of the facts have been stipulated and are so found.

Sika Chemical Corp. (petitioner), which was incorporated under the laws of the State of New Jersey, had its principal place of business in Lyndhurst, N.J., at the time the petition herein was filed. It timely filed Federal income tax returns, on the accrual method, for its 1964, 1965, 1966, and 1967 calendar

years with the District Director of Internal Revenue, Newark, N.J.

Petitioner has been engaged in business since 1937, with its headquarters and principal place of business located in northern New Jersey. Its business involves primarily the manufacture, sale, and distribution of chemical products which are used, for the most part, as additives to concrete products, or for waterproofing, accelerating, or decelerating the set of concrete, epoxies, adhesives, and other products used in conjunction with concrete products. Petitioner, through agencies, dealers, and distributors has, for many years, marketed these products throughout most of the United States. During the years here before us, 90 percent of petitioner's stock was owned by Sika/Holding A. G. Zurich, Switzerland (Sika-Swiss), a foreign holding company which is owned 100 percent by two Swiss nationals. The balance of petitioner's stock is owned in equal shares by two United States citizens.

In 1953, petitioner began directly marketing and selling its products in Canada. In 1958, after its selling practices were brought into question by Canadian authorities, petitioner established a wholly owned subsidiary corporation in Canada named Sika Chemical of Canada, Ltd. (Sika-Canada), to sell its products and to conduct its business operations. During the taxable years before us, all sales by petitioner to Sika-Canada were made at the same published prices as prevailed with respect to petitioner's United States customers. The terms of all sales were 1 percent 10 days and net in 30 days. Petitioner accrued the income from such sales on its books and reported and paid United States income tax on the profit therefrom. The following table sets forth the sales, payments, and account balances between petitioner and Sika-Canada for the years involved herein:

| Year | Sales | Payments | Balance |
|------|-------|----------|---------|
| 1964[1] | $131,978.72 | $50,000 | $435,667.67 (12/31/64) |
| 1965 | 210,352.89 | 220,000 | 426,020.05 (12/31/65) |
| 1966 | 243,026.42 | 100,000 | 569,406.47 (12/31/66) |
| 1967 | 103,152.20 | 236,108 | 436,450.38 (12/31/67) |

[1] Jan. 1, 1964, balance of account receivable due from Sika-Canada to petitioner was $353,688.44.

From the date of its establishment in 1958 Sika-Canada suffered heavy operating losses. A table of the losses and accumulated deficits is set out below:

| Year | Loss | Accumulated deficit |
|---|---|---|
| 1958 | $37,995 | $37,995 |
| 1959 | 19,208 | 57,203 |
| 1960 | 20,186 | 77,389 |
| 1961 | 19,576 | 96,965 |
| 1962 | 32,061 | 129,026 |
| 1963 | 40,378 | 169,404 |
| 1964 | 70,516 | 239,920 |
| 1965 | 6,695 | 246,615 |
| 1966 | 10,081 | 256,696 |
| 1967 | 56,969 | 313,665 |
| 1968 | 16,357 | [2] 396,909 |
| 1969 | 66,887 | 396,909 |

Sika-Canada's audited financial statement as of December 31, 1967, showing an excess of $263,665 in liabilities over assets, was, in part, as follows:

| Assets | | 1967 | 1966 |
|---|---|---|---|
| Current assets: | | | |
| Cash and short-term deposits | | $40,028 | $265,691 |
| Accounts receivable | | 55,463 | 102,155 |
| Inventories—at the lower of | | | |
| cost or net realizable value | | 59,399 | 39,499 |
| Prepaid expenses | | 828 | 1,553 |
| | | 155,718 | 408,898 |

| | Cost | Accumulated depreciation | | |
|---|---|---|---|---|
| Fixed assets: | | | | |
| Machinery and equipment | $61,145 | $15,502 | 45,643 | 2,078 |
| Automobiles | 16,254 | 9,447 | 6,807 | 3,220 |
| Furniture and fixtures | 11,533 | 5,722 | 5,811 | 9,724 |
| | 88,932 | 30,671 | 58,261 | 15,022 |
| Leasehold improvements— | | | | |
| at cost less amortization | | | 13,479 | --- |
| | | | 71,740 | 15,022 |
| Other assets: | | | | |
| Organization expense | | | --- | 407 |
| | | | 227,458 | 424,327 |

---

[2] So stipulated, this figure probably should be $330,022.

| Liabilities | 1967 | 1966 |
|---|---|---|
| Current liabilities: | | |
| Accounts payable and accrued liabilities | $8,728 | $8,798 |
| Sales and other taxes payable | 4,483 | 2,995 |
| Account payable to an affiliated company | 5,992 | |
| Account payable to the parent company (n. 1) | 471,920 | 619,230 |
| | 491,123 | 631,023 |

Sika-Canada continued to operate only by reason of petitioner's forebearance in enforcing collection of the account receivable (the account) balance described above.

The minutes of petitioner state that a meeting of the board of directors of petitioner was held on December 21, 1967, and the following resolution was unanimously adopted:

RESOLVED, That Sika Chemical Corporation charge to current earnings and adjust its books to write-off the excess of its claim for accounts receivable from Sika Chemical of Canada, Ltd. over and above the net realizable value of the assets of such company, as of December 31, 1967, after allowance for payment of claims of all creditors of such subsidiary exclusive of the claim of Sika Chemical Corporation; and the officers of this Company were directed to adjust our books accordingly.

Consistent with the above-quoted resolution, a specific charge-off for partial worthlessness of the account in the sum of $193,418.89 was made on petitioner's books of account for the taxable year 1967. Such amount was also claimed as a bad debt loss on petitioner's 1967 Federal income tax return, and was calculated as follows:

| | |
|---|---|
| Petitioner's investment in Sika-Canada stock | $50,000.00 |
| Accounts receivable from Sika-Canada | 436,450.38 |
| | 486,450.38 |
| Less: Prior losses (Canadian) claimed on consolidated returns for 1958-61 | 100,500.54 |
| Petitioner's calculation of its tax basis in account receivable | 385,949.93 |
| Less: Petitioner's calculation of net amount realizable by petitioner on its accounts receivable from Sika-Canada | 192,531.04 |
| Bad debt deduction claimed | 193,418.89 |

Petitioner computed its estimate of the net amount realizable on the account as follows:

Total assets of Sika-Canada in Canadian currency as of Dec. 31, 1967, shown in audited financial statement (i.e., book value) _____ $227,458.00

Less: Liabilities due to others (exclusive of petitioner) _____ 19,203.00

208,255.00

Converted to U.S. dollars at $0.9245 = _____ 192,531.04

In 1964 petitioner had established an incentive compensation program for its management which provided bonus compensation of 30 percent of income. The term "income" for purposes of this program would be defined by petitioner, and, for the year 1967, such "income" was reduced because of the writeoff of a portion of the account due from Sika-Canada. The amount of incentive compensation received by the management group in 1967, however, was comparable to prior years.

The minutes of petitioner state that on March 4, 1968, at a special meeting of the board of directors of petitioner, the following resolution was adopted:

RESOLVED: That Sika Chemical Corporation sell to Sika Holding, A. G., all its right, title and, interest in Sika Chemical of Canada, Ltd., at a price equivalent to the net book value of Sika Chemical of Canada, Ltd., exclusive of the amount owing to Sika Chemical Corporation, the price as so determined amounting to $192,531.04, together with assuming the liability of Sika Chemical Corporation as guarantor under a lease agreement between Sika Chemical of Canada, Ltd., and Pointe Claire Industrial Park, Inc., dated December 30, 1966; payment to be made by Sika Holding, A.G., on the basis of $129,596.27 in cash on March 8, 1968, together with a note with interest at the rate of 6% per annum for the balance of $62,934.77 due on or before March 15, 1968.

The transaction contemplated by the above resolution was consummated on March 8, 1968, in the manner set forth in said resolution. On March 8, 1968, petitioner sold and assigned the account receivable to Sika-Swiss for $192,531.04. The terms of sale provided for the payment of $129,596.27 in cash, on March 8, 1968, and the balance, in the form of a note with 6-percent interest, payable on or before March 15, 1969.

The lease mentioned in the March 4, 1968, resolution was a long-term lease of a building—to be used as Sika-Canada's main office, factory, and warehouse—entered into by Sika-Canada, as lessee, and Pointe Claire Industrial Park, Inc. (Pointe Claire), as lessor, on December 30, 1966. The term of the lease was for 20 years and 4 months commencing on January 1, 1967, with a total rental of $456,610 payable as follows:

| | |
|---|---|
| 1967-71 | $16,005 per annum |
| 1972 | 21,835 |
| 1973-86 | 24,750 per annum |
| 1987 | 8,250 4 months |

As described in the resolution, petitioner's role as guarantor of Sika-Canada's obligations to Pointe-Claire under such lease was assumed by Sika-Swiss in connection with its March 8 purchase of Sika-Canada's stock from petitioner.

Sika-Canada has continued in operation from 1967 up to the present time. In 1971, Sika-Canada issued 3,000 shares of its $100 par value common stock to Sika-Swiss in consideration for Sika-Swiss' cancellation of $300,000 of the account Sika-Swiss had purchased from petitioner in 1968. At the time such stock was issued, the outstanding balance in the account was $535,000, and, as further consideration for the stock issuance, Sika-Swiss forgave the additional $235,000 balance. Sika-Canada's deficit continued to grow in the 1967 to 1971 period and, on January 1, 1971, prior to the above-described transactions involving the account, such deficit totaled $381,603. In its 1970 fiscal year, Sika-Canada did produce net earnings of $15,306, but its 1971 operations resulted in a loss for that year in the amount of $21,746.

Petitioner continued to sell to Sika-Canada after 1967 and up to the present time. The following table shows the sales, payments, and account balances between petitioner and Sika-Canada for the years 1968 through 1974:

| | Sales | Payment | Balance |
|---|---|---|---|
| Jan. 1968 | $606.50 | 0 | $606.50 |
| Feb. 1968 | 376.70 | 0 | 983.20 |
| Mar. 7, 1968 | 3,526.48 | 0 | 5,116.10 |
| 1968 (Total) | 43,226.15 | $16,100.60 | 27,125.55 |
| 1969 | 30,902.57 | 40,397.77 | 17,630.35 |
| 1970 | 118,833.45 | 72,051.30 | 64,412.50 |
| 1971 | 78,673.59 | 128,122.53 | 14,963.56 |
| 1972 | 40,354.92 | 35,147.62 | 20,170.86 |

|      | Sales | Payment | Balance |
|------|-------|---------|---------|
| 1973 | 99,141.20 | 79,153.97 | 40,158.09 |
| 1974 | 157,537.69 | 141,622.18 | 56,073.60 |

The post-1967 sales from petitioner to Sika-Canada were made under terms requiring that accounts be paid within 90 days. During a part of 1972, Sika-Canada was placed on a c.o.d. basis vis-a-vis purchases from petitioner, but the record does not indicate whether the 90-day requirement was enforced at any other specific time after 1967.

In a previous internal administrative proceeding, the respondent proposed deficiencies in petitioner's income tax for the taxable years 1965 and 1966 by imputing to petitioner interest income on its account from Sika-Canada. The following explanation was contained in the 30-day letter:

This item represents interest chargeable to Sika Chemical of Canada, Ltd., a wholly owned subsidiary, based on past due indebtedness arising out of sales of material in the ordinary course of business. Reg. 1.482-2.

This controversy was settled by imputing interest totaling $18,971.73 on a portion of the account. The compromise represented a concession by petitioner of 60 percent of the adjustments proposed.

On its 1967 corporate income tax return petitioner, which did not use the reserve method for handling bad debts, claimed a bad debt loss of $193,419 nearest dollar on its account from Sika-Canada. The method petitioner utilized in calculating the amount of such deduction has been presented above. In his statutory notice, respondent disallowed said deduction in full.

### OPINION

In 1967, petitioner estimated that $193,419 of a $436,450.38 account receivable from its wholly owned subsidiary, Sika-Canada, was worthless. Its action in attempting to deduct part of the account receivable as a "partially worthless bad debt" is contested by respondent.

Section 166(a)(2)[3] provides that: "When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction." The courts have interpreted section 166(a)(2) and similar provisions in earlier

---

[3] All statutory references are to the Internal Revenue Code of 1954, as applicable to the years herein involved, unless otherwise specified.

revenue acts, as conferring a discretion upon the respondent, which, although not boundless, requires respondent's determination as to deductibility to be upheld unless found to be plainly arbitrary or unreasonable. *H. W. Findley*, 25 T.C. 311, 318 (1955), affd. per curiam 236 F. 2d 959 (3d Cir. 1956); *Wilson Bros. & Co. v. Commissioner*, 124 F. 2d 606, 609 (9th Cir. 1941), affg. a Memorandum Opinion of this Court; *Estate of Harris Fahnestock*, 2 T.C. 756, 759 (1943); *Portland Manufacturing Co.*, 56 T.C. 58, 72-73 (1971). In attempting to make the required showing it is the taxpayer's burden to introduce evidence which establishes that in the year the partial worthlessness was claimed, the amount of such worthlessness could be predicted with "reasonable certainty." *Trinco Industries, Inc.*, 22 T.C. 959, 965 (1954); *Wilson Bros. & Co. v. Commissioner*, 124 F. 2d at 610; *First National Bank of Los Angeles*, 6 B.T.A. 850, 860 (1927). Of course, the question of partial worthlessness need not be reached where the taxpayer fails to demonstrate the existence of an enforceable debt. Cf. *Herbert W. Dustin*, 53 T.C. 491, 501 (1969), affd. 467 F. 2d 47, 48 (9th Cir. 1972). In the instant case, the respondent has not indicated any challenge to petitioner's characterization of the account receivable as a "debt" for tax purposes. In any case, we will not look into this issue, as it is our holding that petitioner has failed to prove partial worthlessness of the account receivable.

In estimating the value of Sika-Canada's assets for purposes of determining how much of the account could be paid, petitioner relied solely on balance sheet book value figures. As expressed by petitioner in its opening statement, it is such value which could have been realized had Sika-Canada been liquidated at the close of 1967. Petitioner's reliance on book value, however, ignores the fact that Sika-Canada was in 1967, and continues to be today, an ongoing business concern, operating as petitioner's foothold in the Canadian market. There is no evidence whatsoever in the record that petitioner ever contemplated liquidating its subsidiary, and indeed, the record contains only evidence, to be described below, which supports a contrary conclusion. Where a business continues to operate, especially where no indication is given that a future liquidation is planned, we are most reluctant to accord controlling weight to balance sheet figures in estimating what amount of its business debts are worthless at the close of a particular year. *Trinco Industries, Inc., supra; Peabody Coal Co.,*

18 B.T.A. 1081, 1089-1090 (1930), affd. 55 F. 2d 7 (7th Cir. 1931), cert. denied 287 U.S. 605 (1932); cf. *Richard R. Riss, Sr.,* 56 T.C. 388, 408 (1971), affd. on this issue 478 F. 2d 1160, 1166-1167 (8th Cir. 1973); *Sterling Morton,* 38 B.T.A. 1270, 1278-1279 (1938), affd. 112 F. 2d 320 (7th Cir. 1940).

Petitioner made much of the fact that since its incorporation in 1957, Sika-Canada had almost each year sustained net operating losses. We find to be at least as significant, however, petitioner's continued support of its subsidiary in the face of such losses. *H. W. Findley,* 25 T.C. at 320; *Rogers Peet Co.,* 21 B.T.A. 577, 581 (1930); cf. *Richard R. Riss, Sr.,* 56 T.C. at 410. Less than 1 year prior to the date of the writeoff of a part of the account, petitioner agreed to guarantee Sika-Canada's obligations under a long-term lease of a building to be used as Sika-Canada's headquarters and warehouse. Certainly, petitioner's guarantee of over $450,000 in payments to the lessor must cause us to look with doubt at its claim that almost $200,000 of an amount owed it by Sika-Canada was then worthless. Furthermore, petitioner, after the 1967 writeoff, continued to advance credit to Sika-Canada. While petitioner, after 1967, indicated a desire to enforce more rigid terms of repayment vis-a-vis its subsidiary, and did in fact insist on c.o.d. terms during a period in 1972, it still remains that by the end of 1974 petitioner had allowed Sika-Canada to incur substantial additional indebtedness to it. By the end of 1974 the amount of such additional indebtedness was over $56,000, and such sum represents a balance which has been steadily rising since 1971.

Thus, while claiming on its Federal income tax return a deduction premised on liquidating book values for its subsidiary's assets, petitioner was at the same time dealing with Sika-Canada and promoting its operations in a manner suggesting that its balance sheet was not accurately portraying the company's future prospects and worth. On such facts, we think it incumbent on petitioner to demonstrate that even taking into account the value of its subsidiary as an ongoing entity—including such items as goodwill, and other intangible assets not reflected on the audited balance sheets—that part of the account receivable could be deemed worthless by the close of the 1967 year. *Stranahan v. Commissioner,* 42 F. 2d 729, 732 (6th Cir. 1930), affg. 14 B.T.A. 1405 (1929), cert. denied 283 U.S. 822 (1931).

Except for the fact of Sika-Canada's consistent operating losses, petitioner has failed to introduce any evidence which could help us in determining what, if any, going-concern value rested in its subsidiary.

As to the March 8, 1968, sale transaction between petitioner and Sika-Swiss,[4] we do not think such deserves much weight in deciding Sika-Canada's value as a going concern. Where a debt for which a section 166 deduction is being claimed is held by a party closely related to the debtor, as is the situation here, we must closely scrutinize the attempted deduction. *Cimarron Trust Estate*, 59 T.C. 195, 199 (1972). Such standard gives effect to a reluctance to posit unquestioned faith in transactions between closely related parties. Thus, while the amount offered by an unrelated third party for the assets or stock of the debtor will be very helpful in deciding the issue of worthlessness, see *Portland Manufacturing Co.,* 56 T.C. at 74, we can hardly say the same as to offers from a parent to its 98-percent subsidiary, which is the case here as to Sika-Swiss' purchase from petitioner. Before we would accord the latter type transaction much weight, the petitioner would have to establish that although the relationship between the parties was not arm's length, that an arm's-length price had, in fact, been produced. In the instant case, the record gives no indication what such an arm's-length price might be.

The two cases petitioner cites on brief to support its claim for a deduction are distinguishable. In *American Processing & Sales Co. v. United States*, 371 F. 2d 842 (Ct. Cl. 1967), the taxpayer's claim for a deduction for partial worthlessness was buttressed by the fact that, because of a fire, the debtor's business had been reduced to a mere shell of its former operation. It was this fact which the Court of Claims found most significant in allowing the taxpayer a deduction for 90 percent of his advances to the debtor. 371 F. 2d at 848. We see nothing in the Court of Claims' opinion which compels us to allow petitioner deductions in the instant case. Where one makes an advance of funds and subsequently the debtor is forced to drastically curtail its operations due to some disaster, there has been that "event or * * * change in the

---

[4] The stipulation is unclear as to the actual amount paid by Sika-Swiss for the account and stock of Sika-Canada. On brief, respondent appears to concede that Sika-Swiss paid a total of $192,531.04 for both the account and the stock, and that there were not, in fact, two separate sales, each for $192,531.04. While we tend to agree with respondent's concession, we do not feel compelled to resolve the dilemma because, in any case, we do not think the sales deserve any weight on the worthlessness issue before us.

financial condition of the debtor, subsequent to the time when the obligation was created, which adversely affects the debtor's ability to make repayment." *H. W. Findley,* 25 T.C. at 319. But such "event or change" affords the taxpayer a deduction for partial worthlessness not because of any effect on the debtor's balance sheet position, but because there has been some severe, permanent reduction in the debtor's ability to generate the future income from which the debt could be repaid. In the instant case, there has been no such drastic change in the debtor's income-generating capability, and we are unconvinced that petitioner's account might not have been payable from the subsidiary's future income.

Finally, in *Portland Manufacturing Co., supra,* where we allowed deductions for partial worthlessness for a concern which was not liquidated in the year in which the deductions were claimed (although the firm ceased business operations only 3 months after the close of such year), we found as a fact that the firm had no going-concern value. 56 T.C. at 74. Hence, we were able to look to only the salvage value of its assets—values, moreover, which were supported by subsequent arm's-length offers—in determining the size of the fund from which the debt might be satisfied. See also *George E. Warren Corp. v. United States,* 141 F. Supp. 935, 940 (Ct. Cl. 1956); *Allie M. Turbeville,* 31 B.T.A. 283, 294 (1934), affd. 84 F. 2d 307 (5th Cir. 1936), cert. denied 299 U.S. 581 (1936). In the instant case, we are unable to make a finding in petitioner's favor as to Sika-Canada's value as a going concern, a finding which we think essential to petitioner's case in light of Sika-Canada's continued operation, and petitioner's support thereof.

On brief, petitioner argued that the decision of its board of directors to write off a part of the account embodied a sound business judgment which should be given weight by this Court.

A creditor's judgment as to worthlessness is entitled to consideration, but its decision to write off part of a debt must be supported by the facts in the record, *Portland Manufacturing Co.,* 56 T.C. at 73, a requirement not fulfilled by petitioner in the instant case.

In conclusion, we hold that petitioner has failed to establish with "reasonable certainty" what part, if any, of the account was worthless at the end of 1967. *Trinco Industries, Inc., supra.* Thus, respondent's determination—not having been here shown to be

"plainly arbitrary or unreasonable"—must be upheld. *H. W. Findley, supra; Wilson Bros. & Co. v. Commissioner, supra.*

*Decision will be entered for the respondent.*

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.