MILLER REALTY COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller Realty Co. v. Commissioner
Docket No. 4222-74.
United States Tax Court
T.C. Memo 1977-440; 1977 Tax Ct. Memo LEXIS 3; 36 T.C.M. (CCH) 1821; T.C.M. (RIA) 770440; December 29, 1977, Filed John J. O'Toole,Edwin Fradkin,Bruce E. Goldman, and William D. Hecht, for the petitioner. Gerald J. O'T /ole, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income tax in the amounts of $18,408.93 and $422.29 for its fiscal years ended November 30, 1968 and 1969, respectively. The issues for decision are: (1) Whether a bona fide indebtedness was created by advances of *4 funds by petitioner to another corporation, all of the stock of which was owned by members of the same family that owned petitioner's stock; and (2) if such a bona fide indebtedness was created, whether that indebtedness became partially worthless during petitioner's fiscal year ended November 30, 1968. [1]
All of the facts have been stipulated and are found accordingly. Petitioner is a corporation formed under the laws of Pennsylvania on May 1, 1956. Its principal place of business is, and was at the time its petition in this case was filed, in Cherry Hill, New Jersey. Petitioner filed its Federal corporate income tax returns for the fiscal years ended November 30, 1968 and 1969 with the District Director of Internal Revenue, Philadelphia, Pennsylvania. Petitioner employs the accrual method of accounting *5 and uses the specific write-off method for bad debts. During the taxable years in issue the stock of petitioner was held as follows: Percent
John Miller
50
Patricia Shaw
39
First Pennsylvania Bank
and Trust Co., as Trustee
for Joan Miller
11 John Miller served as president of petitioner. Patricia Shaw and Joan Miller are John Miller's daughters. Before the formation of petitioner in 1956, there was in existence a fmily partnership which had operated a laundry and dry cleaning business known as Forrest Laundry. At the same time petitioner was organized in 1956, two other businesses were incorporated under the laws of Pennsylvania. These were Forrest Launderers and Cleaners, Inc. (hereinafter "Forrest-Pennsylvania") and Forrest Launderers and Cleaners of New Jersey (hereinafter "Forrest-New Jersey"). Both corporations were engaged in the operation of a retail laundry business, with Forrest-Pennsylvania serving the greater Philadelphia area and Forrest-New Jersey serving customers in New Jersey. During the entire existence of Forrest-Pennsylvania, John Miller owned 87-1/2 percent of its stock and his daughter Patricia Shaw owned the remaining interest. *6 Prior to 1965, John Miller had owned all the outstanding stock of Forrest-New Jersey. In that year, however, he made a gift of his entire interest in Forrest-New Jersey to his daughter Patricia Shaw, her husband John, and one Fairfax Leary. Their interests in Forrest-New Jersey during the years here in issue were held in the following proportions: Percent
John Shaw
50-1/2
Patricia Shaw
49
Fairfax Leary
1/2 John Shaw was the managing officer of Forrest-New Jersey. The partnership that had existed prior to the formation of the three corporations had owned a building on Columbia Avenue in Philadelphia. This building housed a laundry plant. When the three corporations were formed in 1956, this property was transferred to petitioner. Petitioner thereafter leased the Columbia Avenue laundry plant to Forrest-Pennsylvania at an annual rental of $34,000. Until 1967, Forrest-New Jersey also used the Columbia Avenue property for its laundry and dry cleaning operations. In 1965 the City of Philadelphia acquired the Columbia Avenue property, intending to make use of it as a part of Temple University's expansion program. Condemnation proceedings were completed *7 the next year, and petitioner surrendered possession of the property in 1967.Forrest-Pennsylvania and Forrest-New Jersey thereupon ceased all operations at the Columbia Avenue facility, and on May 31, 1967, Forrest-Pennsylvania was liquidated pursuant to section 337, I.R.C. 1954. [2] When Forrest-Pennsylvania was liquidated, the corporate records disclosed accounts receivable from Forrest-New Jersey in an amount of at least $302,958.05. These accounts were assigned to Forrest-Pennsylvania's stockholders, John Miller and Patricia Shaw. As of the close of the taxable year on November 30, 1966, Forrest-Pennsylvania's books showed an account payable due petitioner of $98,001.13. Upon the liquidation of Forrest-pennsylvania, Forrest-New Jersey assumed the account payable to petitioner after offsetting its own account payable to Forrest-Pennsylvania in the amount of $98,001.13. On July 11, 1966, petitioner had acquired $44,000 of debentures of Forrest-Pennsylvania and $8,000 of debentures of Forrest-New Jersey *8 from Mary Ryan Beidroni and from the First Pennsylvania Bank and Trust Company, as trustee for Robert E. Ryan. Upon the liquidation of Forrest-Pennsylvania in 1967, Forrest-New Jersey assumed Forrest-Pennsylvania's liabilities under the debentures and offset its open accounts payable to Forrest-Pennsylvania in a corresponding amount.Petitioner carried this transaction on its books as $52,000 of 5 percent debentures of Forrest-New Jersey. On October 27, 1966, petitioner paid $18,203.56 to Norton & William, Inc. for laundry machinery to be used by Forrest-New Jersey. In 1967 petitioner constructed a building on Marlkress Road in Cherry Hill, New Jersey at a cost of approximately $681,000. This building was specially designed for the operation of a laundry and dry cleaning business, and during the taxable years in issue petitioner leased this building to Forrest-New Jersey for a yearly rental of $54,000. Thereafter, Forrest-New Jersey used this Cherry Hill plant for its operations. During the taxable year ended November 30, 1967, petitioner advanced Forrest-New Jersey $134,669.72 for the purchase of machinery and equipment. There were no notes or security given, and no interest *9 was charged with respect to this advance. On petitioner's books, this advance was debited to an open account receivable. At the close of the taxable year ended November 30, 1967, petitioner's books reflected the sum of $202,042.08 as a receivable from Forrest-New Jersey.This amount was computed as follows: Balance December 1, 1966
$ 18,293.56
Transferred Open Account Pay-
able From Forrest-Pennsylvania
98,001.13
Payment of 3-Months' Rental
Security to Cherry Hill Indus-
trial Sites for Forrest-New Jersey
9,104.30
Amounts Advanced to Forrest-New
Jersey for Purchase of New Ma-
chinery
134,668.72 *
Amounts Advanced for Expenses
22,530.25
$262,507.96 (**)
Less: Amounts Paid by Forrest-
New Jersey for Petitioner
Relating to Building
Construction
(60,465.88)
$202,042.08 **
During the two taxable years ended November 30, 1968, and November 30, 1969, petitioner made additional small advances to Forrest-New Jersey which were also reflected on petitioner's *10 books as accounts receivable. For the taxable years ended November 30, 1968, and November 30, 1969, petitioner's books reflect the following accounts and entries with respect to its advances to Forrest-New Jersey: Debenture
Accrued
Advances
Bonds
Interest
Rent
and Other
Total
Receivable
Receivable
Receivable
Receivable
Balance December
$258,514.71
$52,000.00
$3,900.00
$
$202,614.71
1, 1967
Accrued rent at
$4,500
per month from
Forrest-N.J.
49,500.00
49,500.00
Interest on bonds
2,600.00
2,600.00
at 5%
Cash advance on
12/18/67
to Forrest-N.J.
70,000.00
70,000.00
Repayments from
Forrest-N.J.
(71,759.87)
(71,759.87)
Partially
worthless bad
debt claimed for
year
ended 11/30/68
(100,000.00)
(100,000.00)
Balance November
208,854.84
52,000.00
6,500.00
49,500.00
100,854.84
30, 1968
Rent at $4,500
per month
due from
54,000.00
54,000.00
Forrest-N.J.
Interest on bonds
2,600.00
2,600.00
at 5%
Advances to
50,188.27
50,188.27
Forrest-N.J.
Repayments from
Forrest-N.J.
(51,623.19)
(51,623.19)
Balance November
$264,019.92 *
$52,000.00
$9,100.00
$54,000.00
$ 99,419.92
30, 1969
*11 On its Federal income tax return for the taxable year ended November 30, 1968, petitioner claimed a partially worthless bad debt of $100,000 with respect to the amount owed it by Forrest-New Jersey. There was no specific chargeoff on petitioner's books and records for this claimed bad debt. Petitioner claimed a net operating loss carryover of $22,717 to the taxable year ended November 30, 1969. As reflected on the balance sheet of the corporate income tax return for the taxable year ended November 30, 1968, the total value of Forrest-New Jersey's assets as of November 30, 1968, was $742,137. Forrest-New Jersey's balance sheet as of November 30, 1968, reflects total liabilities of $1,004,507. Of this amount, over one-half represented amounts payable to petitioner or to its shareholders, John Miller and Patricia Shaw. During the fiscal years ended November 30, 1968, and November 30, 1969, Forrest-New Jersey *12 made repayments to petitioner amounting to $71,759.87 and $51,623.19, respectively. Forrest-New Jersey remained an ongoing business after the taxable years involved herein. As of November 25, 1972, Forrest-New Jersey had reduced the balance payable to petitioner to $122,392, of which $25,000 was payable within a year and the balance thereafter.As of November 24, 1973, petitioner had reduced its indebtedness to petitioner to $70,862. In the taxable year ended November 30, 1967, Forrest-New Jersey had gross receipts from the operation of its business of $1,141,336. In that year, it reported a loss of $200,569 on its Federal income tax return. For the taxable year ended November 30, 1968, Forrest-New Jersey's gross receipts totaled $1,169,245. For that year it reported a loss of $85,557. In the taxable year ended November 30, 1969, Forrest-New Jersey had gross receipts totaling $1,447,120. For that year, the corporation's income tax return reflects a loss of $30,511. For the 52-week period ended November 27, 1971, Forrest-New Jersey's financial statement reveals that the corporation operated at a profit, with net earnings of $167,659. For the 52-week period ended November 25, 1972, Forrest-New *13 Jersey's financial statement (unaudited) reflects that the business was again operated at a profit, with gross receipts of $2,628,215 and net earnings of $122,619. For the 52-week period ended November 24, 1973, the corporation's financial statement (unaudited) discloses gross receipts of $3,578,333, but a loss of $46,252. Respondent disallowed the claimed deduction for a partially worthless bad debt for the taxable year ended November 30, 1968. Disallowance of this deduction eliminated the net operating loss deduction carried forward to the taxable year ended November 30, 1969. Respondent contends that petitioner is not entitled to a deduction for a partially worthless bad debt for its taxable year ended November 30, 1968, because the advances from petitioner to Forrest-New Jersey did not create a bona fide indebtedness. In the alternative, respondent argues that if a true indebtedness was created as a result of the advances from petitioner to Forrest-New Jersey, petitioner has failed to establish the amount of the indebtedness, if any, which became partially worthless in its fiscal year 1968. All of the stock of petitioner was owned and controlled by John Miller, his daughter *14 Patricia Shaw, and a trust for John Miller. Patricia Shaw and her husband John owned 99-1/2 percent of the outstanding stock of the debtor, Forrest-New Jersey. Although transfers between related entities must be closely scrutinized, such transactions can and do under certain circumstances give rise to valid debts. George E. Warren Corp. v. United States,141 F. Supp. 935, 939 (Ct. Cl. 1956). In the case now before us the customary indicia of debt are, for the most part, conspicuously absent. No notes changed hands. The debtor gave no security.Petitioner charged no interest and took no collection action. Furthermore, most of the advances were used for the construction of a new plant and for the purchase of new equipment, items which are clearly capital in nature. On the basis of these facts respondent, citing Tyler v. Tomlinson,414 F.2d 844 (5th Cir. 1969), and Fin Hay Realty Co. v. United States,398 F.2d 694 (3d Cir. 1968), argues that the loan transactions herein should be treated as distributions by the petitioner to its shareholders, *15 followed by a gift of the amount of the "distributions" to the related shareholders of Forrest-New Jersey and a subsequent capital contribution by the shareholders of Forrest-New Jersey to that corporation. Petitioner, on the other hand, argues that the lack of the traditional indicia of indebtedness is not fatal to a finding of indebtedness so long as at the time the advances were made there existed a "reasonable expectation of repayment." It is, petitioner asserts, this element of expected repayment which is the essential ingredient for a finding of valid indebtedness. See American Processing and Sales Co. v. United States,371 F.2d 842, 856 (Ct. Cl. 1967); G.M. Gooch Lumber Sales v. Commissioner,49 T.C. 649, 656 (1968). In further support of its contention that these advances were truly debts, petitioner points out that not only did both parties to the transaction enter the advances on their books as accounts to be repaid, but also repayments were in fact made in 1968 and thereafter. Because in our view petitioner has failed to establish that the advances to Forrest-New Jersey became partially worthless during the taxable year ended November 30, 1968, we *16 find it unnecessary to decide the difficult question whether the advances in question constituted valid indebtednesses. If we assume for purposes of this case that the advances to Forrest-New Jersey did result in bona fide debts, petitioner has on this record failed to establish that it is entitled to this claimed deduction of $100,000 in its fiscal year 1968 for a partially worthless debt. Section 166(a)(2), provides: (2) Partially Worthless Debts.--When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. A deduction for a partially worthless bad debt is committed to respondent's discretion, and unless respondent's judgment is plainly arbitrary or unreasonable, his exercise of discretion should not be disturbed. Findley v. Commissioner,25 T.C. 311, 318 (1955), affd. per curiam, 236 F.2d 959 (3d Cir. 1956); International Properietaries, Inc. v. Commissioner,18 T.C. 133, 138 (1952). *17 The determination of worthlessness in whole or in part depends upon the particular facts and circumstances of the case. Estate of Pachella v. Commissioner,37 T.C. 347, 353 (1961), affd. per curiam 310 F.2d 815 (3d Cir. 1962).To sustain its burden of establishing partial worthlessness, petitioner must introduce evidence that tends to establish that the amount of partial worthlessness could be predicted with reasonable certainty in the year of the claimed deduction. Sika Chemical Corp. v. Commissioner,64 T.C. 856, 863 (1975), affd. 538 F.2d 320 (3d Cir. 1976). Moreover where, as here, the debtor is a party closely related to the taxpayer, the claimed deduction is subject to careful and close scrutiny. Sika Chemical Corp. v. Commissioner, supra at 865. Petitioner has failed to establish with a reasonable certainty that Forrest-New Jersey's indebtedness to it became partially worthless. In fact, petitioner has presented virtually no evidentiary support for the claimed deduction. In addition, petitioner has not explained the method used in determining the amount of partial worthlessness, but leaves totally *18 to speculation why petitioner chose the $100,000 figure. Petitioner relies on the balance sheet book values of Forrest-New Jersey's assets and asserts that for the taxable year ended November 30, 1968, total current liabilities exceeded total current assets in a ratio of 7 to 1. Be that as it may, Forrest-New Jersey had fixed assets of considerable value and a relatively small amount of long-term liabilities. Moreover, the book values of Forrest-New Jersey's assets are not determinative of their true values because the corporation was an ongoing business which generated millions of dollars in gross receipts. As we said in Sika Chemical Corp. v. Commissioner,supra (64 T.C. at 863): Where a business continues to operate, especially where no indication is given that a future liquidation is planned, we are most reluctant to accord controlling weight to balance sheet figures in estimating what amount of its business debts are worthless at the close of a particular year. Moreover, *19 when, as here, a business, although floundering, continues in operation as a going concern, courts have been loath to hold its debts worthless. See Riss v. Commissioner,56 T.C. 388, 408 (1971), Supplemental Opinion 57 T.C. 469 (1971), affd. 478 F.2d 1160 (8th Cir. 1973). Petitioner cites American Procession and Sales Co. v. United States,supra, and Moffat v. Commissioner,T.C. Memo. 1965-183, 24 TCM 961, 34 P-H Memo. T.C. par. 65,183, p. 1048 (1965), affd. 373 F.2d 844 (3d Cir. 1967), in support of the proposition that continuation of business operations does not bar the deduction for partially worthless bad debts. In both of those cases, however, business was continued on a limited scale for the purpose of allowing the taxpayers to wind up their affairs after disastrous events had precluded subsequent profitable operation of the businesses. In those cases the partial worthlessness was evidenced by a discernible change in the financial condition of the debtor which adversely affected the debtor's ability to repay. We have held that *20 partial worthlessness must be evidenced by some such event or change. Fountain v. Commissioner,59 T.C. 696, 707 (1973); Findley v. Commissioner,supra,25 T.C. at 319. No such change was present in the case now before us. Not only did Forrest-New Jersey continue its business operations in full, but the corporation's gross receipts figures indicate that business was constantly expanding. Petitioner claims that the "tremendous losses" incurred by Forrest-New Jersey in the taxable year ended November 30, 1968, prompted it to claim the deduction for partial worthlessness. While it is true that the debtor did incur an operating loss of $85,557 in that year, Forrest-New Jersey claimed a deduction of $64,858 for depreciation during that year. Ignoring this nonexpenditure item, petitioner's loss is in the neighborhood of only $20,000, a figure which hardly represents a "tremendous loss." Moreover, the record reveals that petitioner continued to advance funds to Forrest-New Jersey during the taxable year ended November 30, 1968. These continued advances belie petitioner's assertion that it considered *21 worthless Forrest-New Jersey's debts to it. See Riss v. Commissioner,supra,56 T.C. at 410. Finally, the record reveals that during the year of claimed partial worthlessness the debtor made repayments of $71,759.87. The following year petitioner received repayments of $51,623.19. Repayments continued subsequent to the year of claimed worthlessness, and by November 24, 1973, Forrest-New Jersey had reduced its debt payable to petitioner to $70,862. In sum, petitioner has failed to establish that any part of Forrest-New Jersey's debt to it became worthless in the taxable year ended November 30, 1968. Respondent did not abuse his discretion in disallowing the claimed deduction. Finally, we note that no specific chargeoff was made on petitioner's books and records with respect to the part of the debt claimed to be worthless as explicitly required by section 166(a)(2) and section 1.166-3(a)(2)(i), Income Tax Regs. See International Proprietaries, Inc. v. Commissioner, supra,18 T.C. at 138; Kleberg v. Commissioner,43 B.T.A. 277, 296 (1941). Decision will be entered for the respondent. *22 Footnotes
1. The deficiency for petitioner's fiscal year ended November 30, 1969, resulted from the disallowance of a net operating loss carryover from petitioner's fiscal year ended November 30, 1968. The disallowance of the claimed partially worthless bad debt deduction in petitioner's fiscal year 1968 eliminated the net operating loss carryover to petitioner's fiscal year 1969.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect in the years in issue.↩
*. So stipulated, although elsewhere stipulated as $134,669.72. ↩
**. So stipulated even though the correct addition and subtraction is obviously $282,597.96 and $222,132.08, respectively.↩
*. This is so stipulated, although obviously either the total Rent Receivable is understated by the $49,500 outstanding at November 30, 1968, or the total indebtedness is overstated if the $49,500 rent was in fact paid during the fiscal year ended November 30, 1969.↩